No. 3992

Second Circuit

(Second Division)

JACOBS ET AL.
v. CUTRER

(July 16, 1931. Opinion and Decree.)

S. R. Thomas, of Natchitoches, attorney for plaintiffs, appellants.

Breazealé & Hughes, of Natchitoches, attorneys for defendant, appellee.

STEPHENS, J. On July 1, 1930, the Natchitoches parish Democratic executive

committee met and ordered that a Democratic primary election be held on Tuesday, September 9, 1930, in ward 6 of Natchitoches parish to make a nomination for member of the parish school board from said ward. L. W. Jacobs was the only candidate to qualify, and the executive committee met on July 14, 1930, and declared him the Democratic nominee for member of said school board, and his name, accordingly, was duly certified to the secretary of state; and in due course his name, together with other democratic nominees for various offices, appeared on the ballots furnished for the general election held on November 4, 1930. The defendant, E. T. Cutrer, became an independent candidate for member of such school board, and was declared elected by a majority of one vote by the board of supervisors of election.

This proceeding was instituted by eleven duly qualified electors of ward 6 of Natchitoches parish, alleging that L. W. Jacobs, one of the plaintiffs, was duly elected as member of the Natchitoches parish school board from ward 6 at the general election held on November 4, 1930.

The petition sets forth that Earnest T. Cutrer became an independent candidate at the general election for the office, and that sixty-three persons sought to cast a ballot for him; that he was prohibited by law from becoming an independent candidate against the regular Democratic nominee, and that therefore L. W. Jacobs was duly elected. It is further alleged that two parties residing in Sabine parish voted for the said Cutrer, and that their votes were illegal and should have been disregarded for the reason that they could not return to ward 6 after having abandoned their domicile, and vote for a ward officer. The petition also attacks a number of ballots cast for Cutrer on the ground that the parties casting them had participated in the Democratic primary election held on September 9, 1930, and were prohibited from opposing the nominees of the party made at said primary election. It is further averred that L. W. Jacobs received a majority of the votes cast in the general election, and it should be so declared by a decree of court.

The defendant answered, denying generally the allegations of plaintiffs' petition, and specifically denying the election of Jacobs; and averring that he (the defendant) was elected by a vote of seventy-three to sixty-two, or a majority of eleven.

The defendant further avers in his answer that D. L. Johnson and Miss Addie Johnson voted illegally for Jacobs, being bona fide residents of ward 5 of Natchitoches parish; that ten ballots cast for him (defendant) were counted as "spoiled" ballots; that said ballots counted as "spoiled" were in truth and in fact not spoiled, and on trial of the case he prays that said ballots be counted for him.

The answer of the defendant further alleges that the returns made by the commissioners and the board of supervisors of the election, to the secretary of state show sixty-three votes for defendant and sixty-two votes for the plaintiff Jacobs; and that acting on said returns the secretary of state has issued to the defendant his commission as a school board member of ward 6 of Natchitoches parish. Defendant prays that he be declared elected as such member by a decree of court.

By consent of counsel, the sealed ballot box used in the election was brought into court and the ballots and election returns taken therefrom and inspected by the district judge, who concluded that the de-

fendant Cutrer had received sixty-three votes and the plaintiff Jacobs sixty-one. The plaintiffs' demands were rejected, and they prosecute this appeal.

The contention of plaintiffs that a voter who participates in a party primary election is prohibited from becoming a candidate against the party nominated at such election is no longer an open question in this state, and we shall not discuss it. While the plaintiffs have not abandoned the contention expressly, it is not urged in their brief before us.

On the trial of the case the plaintiffs offered in evidence ballots marked "P-1" to "P-62," inclusive, which were the ballots counted by the commissioners for Jacobs. They were permitted to be filed subject to the objections hereinafter mentioned.

The defendant objected to ballot marked "P-1" on the ground that it was identified by the certificate attached thereto; and that it was the vote cast by D. L. Johnson, a resident of ward 5 of Natchitoches parish, as alleged in defendant's answer. The first objection was properly overruled and the ballot counted as not being identified; it appearing clearly that the intent of the election commissioners who attached the certificate to the ballot was to show the qualifications of the voter, rather than to mark it for future identification. No evidence was introduced or tendered by the defendant to show that the voter was a resident of ward 5; so the latter objection was correctly overruled, irrespective of the legal question presented as to whether a collateral attack can be made on the qualifications of a voter.

Ballot marked "P-16" was objected to on the ground that the certificate as to qualification attached to it is incomplete and unsworn to; and on the further ground that the voter was not on the registration list. Section 35 of Act No. 130 of 1916 provides that, if a voter's name has been accidentally omitted from the registration list, the election commissioners before permitting him to vote shall obtain an affidavit, made by him, to that effect. A mere certificate, such as the one attached to the ballot, is an insufficient compliance with the requirements of the statute; but, as there is no evidence in the record that the voter's name was not on the registration list, we do not feel justified in assuming that it was not, because of the abortive attempt of the commissioners to comply with the statute. The objection, we think, was properly overruled.

Ballot marked "P-22" was objected to for the reason that it was not properly stamped as required by law. The ballot is marked by a cross-mark, wholly outside the circle inclosing the party emblem; and, in our opinion, must be considered as having been marked for identification. Statutes prescribing the form of printed ballots and the kind of paper on which they are to be printed, and prohibiting marks, figures, or devices thereon by which one can be distinguished from another, are designed to preserve the secrecy of the ballot and to prevent fraud and intimidation, or bribery; and they are generally, and should be, held to be mandatory.

We find the rule stated in Corpus Juris, Elections, page 157, to be as follows:

"Under the statutes requiring the voter to mark his ballot in the circle at the head of one of the columns or within a voting space opposite the candidate's name for whom he wishes to vote, it has been held that a cross mark elsewhere is insufficient. Under this rule it is held that a cross indicating the voter's choice for a particular candidate must be either wholly or partly within the square opposite such candidate's name. * * * So it has been held that a ballot marked with a cross at the head of a party ticket, but not within

the circle as required by the statute, cannot be counted for any candidate on the ticket so marked."

The rule as stated in 15 Cyc., Elections, page 354, is as follows:

"In order to permit the counting of the ballot the voter's intention must be manifested by a cross mark substantially in the place designated showing an honest intent to follow the directions of the law."

Identically the same rule prevails in Louisiana and has been applied by the Supreme Court in a number of cases, including Vidrine v. Eldred, 153 La. 783, 96 So. 566; Hendry v. Democratic Executive Committee, 128 La. 465, 54 So. 943; and Perez v. Cognevich, 156 La. 331, 100 So. 444. The rule has also been applied by this court in Brantley v. Smith, 6 La. App. 182. The ballot must be considered as having been marked for identification, and not in accordance with the law. The objection should have been sustained, and the vote not counted.

The defendant next objected to ballot marked "P-26" upon the ground that it was identified by a large purple splotch in the blank column for school board member. The mark has all of the appearances of an intentional mark for identification, and the objection should be sustained and the ballot not counted.

Ballot marked "P-29" was objected to by the defendant as identified by two purple marks on the party emblem. The objection is good, and the ballot should be rejected.

Ballot market "P-47" was the next objected to, and for the reason that the mark was outside the circle inclosing the party emblem. The mark is not entirely outside the circle and evidences a bona fide attempt on the part of the voter to comply with the law. The objection should be overruled.

Ballot marked "P-53" was objected to for the reason that the party emblem is stamped three times. The objection is sustained, as the ballot is identified.

Objection was made to plaintiffs' offering of ballot marked "P-62," and was sustained by the trial court, and we think properly so, as it does not appear to have been a vote actually marked and cast.

The plaintiffs next offered in evidence ballots marked "P-63" to "P-78," inclusive, for the stated purpose of showing that, though the voter wrote the name of the defendant thereon in the blank column prepared for the purpose, he failed in each instance to place the official stamp opposite the name so written; and that the votes were invalid, of no legal effect, and should be rejected. The offering was objected to by the defendant as not being responsive to the allegations of the petition, and was admitted subject to the objection by the court.

After attempting to adduce evidence to disqualify Mr. and Mrs. Jim Howard, and others, alleged in the petition to be ineligible to vote, the plaintiffs rested their case.

The defendant offered in evidence ballots marked "D-61" to "D-63," all of which bear the name of Cutrer written by the voter in the blank column prepared for the purpose. This tender of ballots in evidence included plaintiffs' offering "P-63" to "P-78," on which the official stamp was omitted. The plaintiffs made no objection to the evidence, it was filed and the case closed.

The defendant urges that plaintiffs' attack on ballots marked "P-63" to "P-78" is beyond the pleadings. That is true; but it is likewise true that defendant's attack on ballots marked "P-1," "P-16," "P-22," "P-26," "P-29," "P-47," "P-53," and "P-62" is beyond the pleadings. It seems apparent that the scope of the inquiry was

broadened by mutual consent in order that it might be determined from the contents of the ballot box which of the candidates had received a majority of the legal votes cast for the office. The defendant must have so understood it as he initiated the attack, which was of the same character as that of which he now complains. After the plaintiffs had filed the ballots for the purpose of questioning their validity, the defendant filed them as legal votes cast for him; and it must be considered that he filed them subject to the objection as to their validity made by the plaintiffs. If it be held otherwise, the court would permit the defendant to open an inquiry, and to launch an attack beyond the scope of the pleadings, and restrain the plaintiffs from a counter attack on the subject of the inquiry. The defendant has provoked an issue beyond the pleadings, and used it to his own advantage. He will not be heard to object to the plaintiffs meeting that issue.

The question is fairly presented and must be considered as to whether a ballot should be counted, upon which the name of an independent candidate is written by the voter, but the official stamp opposite the name is entirely omitted.

Section 73 of Act No. 130 of 1916 provides:

"If he desires to vote for a person other than a nominee or political parties, he must write in his own handwriting the name of such person in the space provided for such purpose, with a pencil having a black lead, and stamp with the official stamp the white square in the voting space at the right of the name so written."

It must be conceded that, if the voter writes the name of the independent candidate on the ballot in the proper place, he has expressed an intention to vote for him, but has he actually voted for him, if the statute requires that he stamp with the official stamp the white square in the voting space, and he has not done so? We must answer in the negative. It is not the act of writing the name on the ballot which constitutes the essential act of voting, it is the stamp properly placed. The intent of the voter should be sought and considered, but the intent must be expressed, however poorly and inaccurately, in the manner provided by the statute. State v. Williams, 97 Fla. 159, 120 So. 310; 20 Corpus Juris, Elections, page 156, sec. 185; Hunt v. Campbell, 19 Ariz. 254, 169 P. 596; Riley v. Trainor, 57 Colo. 155, 140 P. 469; Powers v. Baum, 277 Ill. 200, 115 N. E. 172; Ogg v. Glover, 72 Kan. 247, 83 P. 1039; King v. McMahan, 179 Ky. 536, 200 S. W. 956.

The affixing of the stamp is mandatory, and its omission is fatal to the validity of the ballot. The sixteen ballots, therefore, marked "P-63" to "P-78" should be rejected.

The official returns show that Jacobs received sixty-two votes and Cutrer sixty-three. As five of Jacobs' votes and sixteen of Cutrer's votes have been rejected, the result now obtained is Jacobs, fifty-seven, and Cutrer, forty-seven.

The question of the ineligibility of Mr. and Mrs. Jim Howard to vote in ward 6, and the correctness of the ruling of the district court on the admissibility of evidence tendered on that question, will not be discussed, as the result cannot be affected thereby.

Therefore, for the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that L. W. Jacobs, having received a majority of the votes cast at the general election held on November 4, 1930, be declared to have been elected as a member of the Natchitoches parish school board from ward 6.