John L. HALL, Plaintiff-Appellee,

v.

Olen C. PATE, Defendant-Appellant.

Supreme Court of Tennessee.

Feb. 9, 1981.

---

John L. Bowers, Jr. and John L. Bowers, III, Elizabethton, for plaintiff-appellee; Allen, Nelson & Bowers, Lodge Evans, Elizabethton, of counsel.

George F. Dugger, Jr. and Rondal B. Cole, Elizabethton, for defendant-appellant.

HARBISON, Justice.

This case involves the contest of an election held on August 7, 1980, for the office of Superintendent of Schools of Carter County. The Election Commission certified that appellant, Olen C. Pate, had received a majority of eighteen votes, he having received 3,383 votes and the contestant, John L. Hall, having received 3,365. In these proceedings appellee successfully challenged the results. After a lengthy trial the Chancellor held that numerous write-in votes, disallowed by the Commission, had been cast for appellee and should have been counted for him. He certified appellee as the winner of the election, and appellant seeks review of that decision here.

While there were a number of paper ballots containing various types of irregularities, all parties concede that the validity of one group of ninety-seven write-in votes is determinative. On each of these ninety-seven ballots the voter had written the name of the contestant, Hall, in one of the columns provided for voting for the Superintendent of Schools. In each instance, however, the voter had failed to make any mark such as an "x", carat or other symbol opposite the name of any candidate for this office. Appellant had been nominated as the Republican candidate. His name appeared not only on voting machines but was also printed on paper ballots issued to voters for the purpose of writing in the name of a candidate.

Appellant insists that since the voters in this category did not express a preference for either of the candidates, all ninety-seven ballots should be disallowed. If this were done, appellant would be the winner of the election. On the other hand, if these ninety-seven ballots are counted for appellee, his total vote will exceed that of appellant. For that reason, it is not necessary to consider a small number of write-in ballots containing other alleged irregularities or defects.

The Chancellor held that the ninety-seven ballots should be counted for the contestant Hall. On each of these ballots there were three vertical columns provided for voters to indicate their preferences for candidates for various offices in the general election. The first column contained a space for voting for nominees of the Democratic Party; the second column was for Republican nominees and the third column for Independent candidates. The name of appellant, Mr. Pate, then the incumbent school superintendent, was printed in the center column with a box opposite his name in which a person voting for him would have been expected to place an "x" or other symbol. Beneath his name was a blank space opposite which there was a similar box. There was no Democratic nominee, so that in the Democratic column there was a blank space with a box, and the Independent column was identical.

The contestant Hall did not decide to seek the office until a few days before the general election. During that period he waged

an extensive campaign in the news media, soliciting votes as a write-in candidate. On each of the ninety-seven ballots under consideration his name was written by the voter in one of the three columns described above, but there was no other mark indicating the voter's preference for appellee or any other candidate. The names of a few other persons were written in for the office of school superintendent, but those ballots are not in issue here; appellee was the only major write-in candidate, and there were no other announced write-in candidates for the other offices on the general election ballot.

Most voting in the county was done on voting machines. Of course, appellee received none of those votes. Appellant received some write-in votes, and these were counted for him by the Chancellor, but the overwhelming majority of the write-in votes were for appellee. With respect to the ninety-seven ballots under consideration, the Chancellor allowed each of them as votes for appellee, regardless of whether his name was written in the Democratic, the Republican or the Independent column.

An issue of statutory interpretation is presented. Voting by paper ballots is governed by T.C.A. § 2–7–114. The first subsection contains procedures for the obtaining of a paper ballot. The statute then provides:

"(b) The voter shall then go to one (1) of the voting compartments and shall prepare his ballot by making in the appropriate place a cross (x) or other mark opposite the name of the candidate of his choice for each office to be filled, or by filling in the name of the candidate of his choice in the blank space provided and making a cross (x) or other mark opposite it, and by making a cross (x) or other mark opposite the answer he desires to give on each question. Before leaving the voting compartment, the voter shall

fold his ballot so that his votes cannot be seen but so that the information printed on the back of the ballot and the numbered stub are plainly visible."

None of the ninety-seven ballots in question complied with these statutory provisions for marking paper ballots. On each the name of appellee was written but no cross or other mark was placed opposite it.

These, however, are not the only relevant statutory provisions.[1] They are part of the general election laws which were comprehensively revised in 1972. These statutes contain other provisions concerning ballots which may be counted. Only part of these provisions were contained in earlier law. T.C.A. § 2–7–133(b) provides:

"If the voter marks more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the voter's choice for any office to be filled or on a question, his ballot shall not be counted for such office and shall be marked "Uncounted" beside the office and be signed by the judges. *It shall be counted so far as it is properly marked or so far as it is possible to determine the voter's choice.*"
(Emphasis added).

It is apparent that the General Assembly contemplated that persons marking ballots might not do so in literal compliance with the provisions of the statutes. The last sentence quoted above indicates a legislative intent that a ballot which is not perfectly marked may still be counted if the intent of the voter can be ascertained therefrom.

In the present case, there were no other announced write-in candidates for the office in question or for any other office on the general election ballot. In order to vote for appellee, a voter had to request a paper ballot; if he wished to vote for appellant, a

---

[1] An earlier statute required that a voter designate the candidate of his choice by a cross (x), but this Court held that the form of mark made by the voter was not mandatory and that a carat or check would be sufficient to demonstrate the intention of the voter. *Menees v. Ewing*, 141 Tenn. 399, 210 S.W. 648 (1918).

Thereafter the statute was amended to provide that the voter should make "a cross (x) or other mark." In a subsequent case the Court stated that if a voter makes his choice clear and obvious, his vote should be counted. *Reeder v. Holt*, 220 Tenn. 428, 418 S.W.2d 249 (1967).

voter could use a machine. Even if he obtained a paper ballot, one could vote for appellant simply by marking a cross or other symbol in the box opposite his printed name. In order to vote for appellee, however, one had first to request a paper ballot and then to write in the name of appellee. The Chancellor concluded, therefore, that even though a voter did not make a mark opposite the written-in name, his acts of obtaining a paper ballot and writing the name of appellee strongly indicated his intention to vote for appellee.

We find this reasoning persuasive. It is true that there were a number of persons who obtained paper ballots and so marked them that the intention of the voter could not be ascertained. Some persons voted for two candidates; some wrote in the name of appellee for the wrong office; other ballots were irregular in various ways. The Chancellor disallowed very many of those ballots, but on the ninety-seven in question he concluded that each voter had manifested no intention other than to vote for appellee.

Cases from other jurisdictions are not particularly helpful, because each case turns upon its own facts and upon the specific provisions of governing statutes. In a number of jurisdictions statutory requirements that a voter make a mark opposite the name of a candidate have been held to be mandatory, and the mere writing of the name of a candidate has been held to be insufficient. Appellant particularly relies upon the case of *Yeoman v. Houston*, 168 Neb. 855, 97 N.W.2d 634 (1959), in which over one hundred ballots marked like those involved here were disallowed. *See also Stramaglia v. Jenkins*, 9 Ill.App.3d 703, 292 N.E.2d 912 (1973); *Jacobs v. Cutrer*, 17 La.App. 383, 136 So. 119 (1931); *In re Keogh-Dwyer*, 85 N.J.Super. 188, 204 A.2d 351 (1964). In some of these cases, however, the statutory provisions were different from those of Tennessee. In others, the ballot contained specific printed instructions for the voter to follow, whereas in the present case the paper ballots contained no instructions at all, nor were voters given any instructions by officers of the election as to the method of casting a write-in vote.

Statutory provisions requiring the placing of a mark opposite the name of a write-in candidate have been held directory, rather than mandatory, in other jurisdictions. Appellee relies upon the case of *Brannon v. Perkey*, 127 W.Va. 103, 31 S.E.2d 898 (1944), in which the Court said:

"It is further provided: 'If the voter desires to vote for any person whose name does not appear on the ticket, he may substitute the name by writing it with a black [lead] pencil or other means in the proper place and making a cross mark in the blank space at the left of the name so written.' Code, 3–5–19, as amended. The statutory provision just quoted is a legislative recognition of the right of a voter to select some person other than those nominated for office and whose name is not printed on the ballot. It is unnecessary to the validity of a vote cast that a cross mark appear in the space to the left of the name so written." 31 S.E.2d at 901.

In the case of *Fisher v. Clissold*, 398 P.2d 553 (Wyo.1965), there were fifteen ballots upon which the voters had written the name of a candidate but had not made a cross or other mark thereafter. These votes were not counted by the election officials or by the trial court in election contest proceedings.

It appeared that state statutes required instructions on ballots to direct a voter, in writing in the name of a candidate, to "mark a cross in the square immediately to the right of the name so written in." In fact, however, the instructions printed on the ballots simply directed a voter to make a cross to the right of the printed name of a candidate

"or write the name of any other person for whom you want to vote, in the proper place." 398 P.2d at 555.

Reversing the trial court, the Supreme Court of Wyoming held that these instructions, although not in literal compliance with the statute, did not render the ballots invalid. The Court said:

"The only presumption which could be indulged in, as far as the election in Jackson is concerned, is that the voters intended to follow the instruction which was actually given them. The intent of such voters must be judged in the light of the instruction under which they were voting. This intent must not be defeated by the mistake of election officials who prepared the election ballots.

"We make it clear that we do not say it is unnecessary for a voter to make a mark after a name he has written in, in order for his vote to count, if a voting instruction to that effect has been given in accordance with the 1961 law. We do say, however, that a voter should not be disfranchised and his obvious intent ignored, where he has followed the instruction given by writing the name of the candidate for whom he wants to vote." 398 P.2d at 556.[2]

Observance of statutory requirements with respect to the marking of ballots is, of course, desirable, but it is apparent from the provisions of T.C.A. § 2–7–133 that the intention of the voter is paramount and should be honored if it can be reasonably ascertained. Under the circumstances of this case, we are of the opinion that the Chancellor correctly counted for appellee those paper ballots on which his name had been written and on which there were no other contradictory markings or indications to render the intention of the voter ambiguous or unintelligible. The judgment of the Chancellor with respect to counting the ninety-seven determinative ballots is affirmed.

The Chancellor taxed the costs of the election contest to appellant. It appears from the record that the decision to disallow the disputed ballots was made by the election officials, not by appellant, and that appellant was guilty of no misconduct or impropriety whatever in connection with the election. Under these circumstances, we are of the opinion that costs in the trial court should have been taxed to the Election Commission, and not to the contestee. Inasmuch as the Commission did not appeal, however, costs incident to the appeal will be taxed to appellant Pate and not to the Commission.

As thus modified, the judgment of the Chancellor is affirmed and the cause is remanded to the chancery court for the retaxing of costs there and for such further orders as may be necessary.

BROCK, C. J., and FONES, COOPER and DROWOTA, JJ., concur.

---

2. For other authorities holding that ballots should be counted where the name of a candidate was written in, even though no cross-mark or other symbol was placed opposite it by the voter, see *Clement v. Davis*, 235 Ark. 936, 362 S.W.2d 706 (1962); *Orewiler v. Fisher*, 133 Ohio St. 608, 15 N.E.2d 132 (1938) ("Where names printed on a ballot are not deleted by the elector but an additional name is written in by the elector, with black lead pencil in a blank space provided for such purpose on the ballot, and no cross or other mark is placed opposite any of the names, the ballot should be counted in favor of the candidate whose name was written in, since the writing in thereof shows the intention of the voter and the lack of a cross mark is a technical error which should not invalidate the ballot.").