(61 South. 525.)

No. 19,856.

TURREGANO v. WHITTINGTON.

(March 24, 1913.)

*(Syllabus by the Court.)*

1. ELECTIONS (§ 154*)—CONTEST—ATTACK ON QUALIFICATIONS OF VOTERS.

The status of registered voters cannot be assailed in a primary election contest on the ground that they were not citizens of the United States at the time of their respective registrations. Article 210 of the Constitution of 1898 provides for a direct action against the voter for the purpose of striking his name from the registration rolls, and on such an issue gives the right of appeal, without costs, to the Supreme Court.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. § 154.*]

2. ELECTIONS (§ 186*)—BALLOTS—MUTILATION.

Under the primary election law of 1912 (Laws 1912, Act No. 198, § 4) ballots are in-

validated by stamping or cross-marking them entirely outside of the voting spaces; or by substituting a circle within the voting space for a cross or stamped mark; or by using a cross in the voting space, and a stamp in ink on the same line, between the voting space and the name of the candidate; or by using marks or making erasures of such a nature as to distinguish the ballot from others marked as required by the statute. On the other hand, under the same statute, ballots will not be invalidated by being slightly torn at the ends, where no intent is manifested to distinguish them from the other ballots; or where the cross-mark is partly within and partly without the voting space, or where the stamp mark within the voting space is blurred or blotted, or the ink has spread beyond the lines; or where the stamp mark is imperfect or indistinct for lack of sufficient ink, when at the same time it does not appear that the irregularities and imperfections in the markings were intended to identify the ballots, but were the result of accident, or the use of poor materials, or unskillfulness or carelessness.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 159; Dec. Dig. § 186.*]

3. ELECTIONS (§ 186*) — BALLOTS — STAMP MARK—MUTILATION.

Where a mark in the form of a stamp mark was made in the voting space with a black lead pencil instead of ink, the ballot will not be vitiated.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 159; Dec. Dig. § 186.*]

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by Jules P. Turregano against William W. Whittington, Jr. From a judgment for plaintiff, defendant appeals. Reversed, with directions to dismiss.

Hundley & Hawthorn, Hunter & Hunter, G. P. Whittington, and W. W. Whittington, Jr., all of Alexandria, for appellant. Blackman & Overton, of Alexandria, for appellee.

LAND, J. Plaintiff and defendant were rival candidates for the Democratic nomination of mayor and commissioner of public health and safety for the city of Alexandria at a primary election held on February 18, 1913. Defendant was returned as elected by a majority of one vote. Whereupon plaintiff filed his petition contesting the election, and claiming to have been elected by a majority of the legal votes cast at said election. After a prolonged trial, the judge below rendered judgment declaring the plaintiff the nominee by a majority of two. Defendant has appealed.

At the primary election, according to the returns, the plaintiff received 411 votes, and the defendant received 412 votes.

The judge a quo found that 8 illegal votes had been cast and counted for the plaintiff and 11 for the defendant. He also found that a certain vote should be counted for neither.

The judge disposed of the 14 "spoiled ballots" as follows: Six were deducted from the total vote for each candidate, and 2 were equally divided between them.

The result was a majority of 2 in favor of the plaintiff, who was declared the nominee of the Democratic party as above stated.

[2] We will first consider the ruling of the judge a quo rejecting the 12 ballots. Counsel for the plaintiff have argued in this court that all of said ballots should have been counted as cast. Counsel for the defendant, on the other hand, have argued that all 6 of these ballots cast for the defendant should be counted in his favor and 4 of the ballots cast for plaintiff should be rejected. The objection made by the judge to all of the 12 ballots was that they were not marked as required by law.

Section 4 of Act 198 of 1912 provides as follows:

"Upon receiving his ballot the voter shall * * * designate his choice by stamping or making a cross, in ink, or with a lead pencil, in the voting space to the right of and opposite the name of the candidate he desires to support for the particular office for which they have offered."

. In the ballots in question this voting place is designated by a small square, and each ballot contains the following direction:

"To vote for a candidate stamp or cross-mark X the square opposite his name."

Ballots 2 and 3 each show a stamp mark between the name "J. P. Turregano" and the square to the right, but no stamp on the square. Ballot 4 shows a circle within the square, written with a lead pencil. Ballot 5 shows, opposite the name "J. P. Turregano," a stamp mark and a cross, the latter within the square and the former between the square and the name. Moreover, the names of other candidates on this ballot are stamped out. Ballot 6 is not stamped opposite the name of either candidate. Ballot 7, cast for defendant, has the cross-mark in the square, but the lower end below the number of the ballot has been torn off in an irregular manner. None of the ballots were perforated above the numbers. Ballot 8 shows opposite the name of W. W. Whittington, Jr., an inartistic cross mostly within the square. Ballot 9, opposite the same name, shows within the square a blotted stamp mark. Ballot 10 shows opposite the plaintiff's name an oblong mark extending beyond the square. Ballot 11 shows opposite the defendant's name an irregular cross-mark wholly within the squares. Ballot 12 shows opposite the same name a stamp mark in the square made with a black lead pencil. Ballot 13, cast for the plaintiff, was properly stamped. Ballot 14, cast for the defendant, was stamped in the square in such a manner as to show a circle, with a thick rim around a spot in the center. Ballot 15, cast for the plaintiff, is properly stamped. A small fraction of the upper right-hand corner of this ballot has been torn off. Ballot 16 cast for defendant is so stamped in the square that the ink slightly protrudes beyond the lines.

Counsel for plaintiff say in their able brief:

"There is nothing in the record to show that the position of the voting marks, the tearing and puncturing of the ballots, and their being blurred was done with any intention of identifying the ballot, nor does it appear clear to us that these disfigurements of the ballots were done by the voters with intention of identifying their ballot."

Counsel further contend that ballots marked to the right, but not in the voting space, should be counted; and cite 15 Cyc. 354, as follows:

"Ballots marked with a cross to the right side of a name, not in the voting space left for that purpose, but in a vacant space immediately after that name, will be counted."

There are conflicts of authority in other jurisdictions on this point, due doubtless to differences of legislation on the subject-matter, but this court has held that in this state the statutory directions for the stamping of ballots are mandatory, and the required form should be followed. See Hendry v. Committee, 128 La. 465, 54 South. 943. See, also, Thornhill v. Wear, 59 South. 912, 131 La. 479. In the Hendry Case the court said:

"The idea is that all ballots are alike, and the voter prepares his ballot and casts it in secret, with no distinguishing marks upon it."

It is obvious that a mark outside of the square may be used for the purpose of showing how particular voters cast their ballots.

The law does not require the voter to stamp or mark the square in an artistic manner. A perfect stamping cannot be expected of the average voter, furnished with the rubber end of a lead pencil and a small bottle of ink, or a perfect cross be expected of the average voter unskilled in the use of pen and pencil. It suffices if the voter honestly attempted to conform to the statute by stamping or making a cross in the proper place, although with more or less imperfect success. Parker v. Orr, 158 Ill. 609, 41 N. E. 1002, 30 L. R. A. 227. The law does not require the placing of the stamp exactly in the center of the square. Bechtel v. Albin, 134 Ind. 193, 33 N. E. 967. A cross-mark partly within and partly without the voting space does not render the ballot invalid. Pierce

v. Parkhurst, 24 Misc. Rep. 442, 53 N. Y. Supp. 598. Marks, daubs, blurs, and blots which do not appear to have been made intentionally or for the purpose of marking the ballot, but seem to have been the result of accident, do not render the ballot invalid. Houston v. Steele, 98 Ky. 596, 34 S. W. 6; Vallier v. Brakke, 7 S. D. 343, 64 N. W. 180; Parker v. Orr, 158 Ill. 609, 41 N. E. 1002, 30 L. R. A. 227; Church v. Walker, 10 S. D. 90, 72 N. W. 101; Zeis v. Passwater, 142 Ind. 375, 41 N. E. 796; Dennis v. Caughlin, 22 Nev. 447, 41 Pac. 768, 29 L. R. A. 731, 58 Am. St. Rep. 761; People ex rel. Beasley v. Sausalito, 106 Cal. 500, 39 Pac. 937.

[3] Taking up the individual ballots, we feel no hesitation in holding that ballot 2, cast for the plaintiff, was properly rejected· because the stamp is not in the square, but wholly to the left of the square. Ballot 3, cast for the plaintiff, was properly rejected for the same reason. Ballot 4, cast for the plaintiff, has within the square, a circle in lead pencil. The voter did not attempt to stamp or cross-mark the square according to the directions printed on the ballot, but substituted circular and oval marks in voting for three different candidates. There can be no question that a voting mark which differs radically from the ones prescribed by law is a distinguishing mark. Ballot 4 was, therefore, properly rejected. Ballot 5, cast for the plaintiff, shows a cross-mark in pencil within the square, and a stamp in ink between the candidates' name and the square. The same voter properly voted for two other candidates on the same ballot by stamping the squares opposite their respective names. The same voter also stamped out the names of five candidates appearing on the ballot. On the face of this ballot, the voter used the stamp artistically, even in making erasures, and the resort to a lead pencil for the purpose of crossing the square opposite the name of the plaintiff cannot be explained on any reasonable hypothesis of honest mistake. The use of a stamp and cross in voting for the same candidate is a distinguishing mark reprobated by the primary law. We are of opinion that this ballot was properly rejected. Ballot 6 was not cast for either plaintiff or defendant. Ballot 7, cast for defendant, is properly marked with a cross within the square. The ballots were not perforated, and no numbers were printed thereon as in case of ballots for state elections issued from the office of the Secretary of State. All of the ballots attached to the record, except two, show two different numbers, one of which has been partially erased. The objection that the numbers should have been detached before the casting of the ballots has not been raised in this case. Ballot 7 shows a small irregular fraction thereof torn from its lower end beneath the figures written thereon. Ballot 15, cast for plaintiff, likewise shows a small fraction thereof torn off from the upper right-hand corner. We are of opinion that these slight mutilations are of no consequence, and ballots 7 and 15 should be counted as cast. Ballot 8, cast for defendant, has no defects, except an imperfect cross, most of which is within the square opposite his name. We are of opinion that this ballot should be counted for the defendant. Ballot 9, cast for defendant, has no defects except a blurred stamp mark in the proper square. We think that this ballot should be counted for the defendant. Ballot 10, cast for the plaintiff, shows an oblong blear in ink extending to the left, well beyond the square. The blear does not resemble either a cross or the form of the stamp used by the voters at the election in question. The mark is so dubious that we think that this ballot was properly rejected. Ballot 11, cast for the defendant, shows a decided cross in the proper square, and should be counted in his favor. Ballot 12, cast for defendant, shows an inartistic but obvious stamp mark

in the proper square. The circumstance that this mark was made with a pencil instead of ink is insufficient cause for the rejection of this ballot. Ballot 13, cast for the plaintiff, was properly voted. Ballot 14, cast for defendant, shows on its face that the imperfection in the stamp mark was due to the insufficient flow of the ink. The same stamp was used thrice by the voter on this ballot, and opposite the name of B. J. Carbe its impress is almost perfect. This ballot should be counted for defendant. Ballot 15, cast in favor of the plaintiff, shows similar but slighter imperfections in the stamp marks. Ballot 16, cast in favor of the defendant, shows, opposite his name, a blurred stamp mark protruding slightly beyond the lines of the square. The two stamp marks below on the same ballot show that the ink did not spread as much. Our findings on the ballots in question may be summarized as follows: Counted for plaintiff, Nos. 13 and 15. Rejected, Nos. 2, 3, 4, 5, and 10. Counted for defendant, Nos. 7, 8, 9, 11, 12, 14, and 16. Difference in favor of the defendant, 5.

[1] The plaintiff in his petition assailed the right of Sam Fried and Ike Pasner, registered voters, to cast their ballots in the primary election on the ground that they were of alien birth, and were not citizens of the United States. Defendant excepted to this attack on the ground that the status of Fried and Pasner as registered voters could not be inquired into in this proceeding. The exception was overruled by the judge a quo. This was error. See the Marrero Cases, 59 South. 791 and 863,[1] and Smith v. Police Jury, 125 La. 731, 51 South. 703, a contested election case, in which this court said:

"We do not think that in this collateral proceeding the court has any jurisdiction to purge the registration rolls of the parish. Article 201 of the Constitution contemplates a direct action against the voter for the purpose of striking his name from the registration rolls. And on such an issue gives a right of appeal to the Supreme Court.

[1] 131 La. 372, 432.

Fried's vote was counted for the defendant, but Pasner's vote was ruled out. This was error. Pasner's vote should have been counted in favor of the defendant.

As the judge a quo gave to each party one of the spoiled ballots so called, we find that the defendant is entitled to 4 more votes than was allowed him in the court below, and also to the vote of Ike Pasner, making a difference of 5 votes in favor of the defendant, and giving him a majority of 3 votes.

We deem it unnecessary to consider whether the judge below erred in rejecting other votes cast in favor of the defendant.

Plaintiff's counsel complain that the judge a quo erred in not deducting the admitted illegal vote of Ellis Graham from the total votes cast for the defendant. The witness, after the primary election, made affidavit that he voted for the plaintiff. On the stand his testimony on the subject-matter was so confused and unsatisfactory that the trial judge threw out his vote. Graham may not have voted for either candidate, or may have voted for the plaintiff, or for the defendant. Under this condition of the evidence, we think that the judge a quo very properly struck out Graham's vote. The judge a quo struck out 8 votes cast for the plaintiff and 11 votes cast for the defendant, on the ground that the voters were not actual bona fide residents of the city of Alexandria for six months next preceding the election. Plaintiff's counsel complain that the judge a quo erred in striking out the vote of L. T. Longmire, cast for the plaintiff. Mr. Longmire had no actual residence in the city of Alexandria between March 17, 1912, and January 30, 1913. In the interval he had lived and worked in Ft. Smith, Ark., and the city of Shreveport. Counsel admit that there may be some doubt as to their position in reference to this voter; and we are of opinion that there is sufficient doubt to prevent this court from reversing the ruling of the judge a quo as to this vote. Counsel for plaintiff as-

signs no error of the trial judge in striking out the 7 other votes cast for plaintiff by nonresidents.

It is therefore ordered that the judgment appealed from be reversed; and it is now ordered that plaintiff's suit be dismissed, with costs in both courts.