Etienne LeBlanc, the plaintiff in this case, with nine others, was a candidate at a Democratic primary election held in the Town of Erath, Louisiana, on April 8, 1941, for the office of member of the Board of Aldermen of said Town. Five of the ten were to be nominated.
In his petition, he alleges that the Democratic Executive Municipal Committee for the said Town of Erath met at 12 o'clock noon on April 12, 1941 for the purpose of tabulating and promulgating the returns of the said election, and, as is further alleged in said petition, the results of the said tabulation showed each of the following candidates to have received the total number of votes set opposite their respective names:
Sulie Dubois 341 A.P. LeBlanc 338 Hazard Comeaux 334 Milton Guidry 329 Bellus Primeaux 324 U.J. Smith 322 J.H. Granger 321 Etienne LeBlanc 321 C.B. LeBlanc 318 L.B. Boudreaux 305
He avers that in accordance with the said tabulation, the Committee declared the following four candidates to have received a majority of the number of votes cast as nominees, namely: Sulie Dubois, A.P. LeBlanc, *Page 276 
Hazard Comeaux and Milton Guidry.
That at the same meeting the Committee ordered a second primary between the last two candidates receiving the greater number of votes, namely, Bellus Primeaux and U.J. Smith, and ordered that a second primary be held on May 13, 1941.
Plaintiff then alleges that the action of the said Committee in ordering the said second primary, in which Bellus Primeaux was to be entered as a candidate, is null, void and of no effect, and should be annulled and rescinded for the following reasons, to-wit:
"A. That Edward Peltier offered himself to the commissioners of said election at Precinct Four of Ward One in the Town of Erath, La., was permitted to vote by the commissioners over the protest and challenge of a duly qualified elector of the Town of Erath, La., which said protest and challenge made in writing was attached to his said ballot; that Peltier marked his said ballot for Bellus Primeaux and the same was counted in favor of Bellus Primeaux despite said protest. That Peltier was not a duly qualified elector of the Town of Erath, and was not entitled to participate in said primary election for the reason that he was not an actual bona fide resident of the Town of Erath, La., for a period of four months next preceding the date of said primary election. That said Peltier, petitioner alleges on information and belief, was, at the time of said primary election, a resident of and domiciled near the outskirts of the Town of Delcambre, La., in Vermilion Parish.
"B. That Ella B. Gary offered herself to the commissioners of said election at Precinct One of Ward One in the Town of Erath, La., was permitted to vote by the commissioners over the protest and challenge of a duly qualified elector of the Town of Erath, La., which said protest and challenge made in writing was attached to her ballot. That she marked her ballot for Bellus Primeaux despite said protest. That said Ella B. Gary was not a duly qualified elector of the Town of Erath, La., and was not entitled to participate in said primary election for the reason that she was not an actual bona fide resident of the Town of Erath, La., for a period of four months next preceding the date of said primary election. That on or about November 11, 1940 said Ella B. Gary moved from the Ninth Ward of Vermilion Parish to the Town of Erath where she remained temporarily until February 15th, 1941 when she again removed to reside in the Town of Kaplan, Vermilion Parish, where she has since resided with her husband. That, accordingly, said Ella B. Gary was a resident of Kaplan, La., at the time she offered to vote in the primary election held in Erath on April 8th, 1941.
"C. That Paul Maturin and Mrs. Paul Maturin (Wilda M. Maturin) offered themselves to the commissioners of said election at Precinct One of Ward One in the Town of Erath, La. were permitted to vote by the commissioners over the protest and challenge of a duly qualified elector of the Town of Erath, which said protest and challenge made in writing was attached to their respective ballots. That the Maturins marked their ballots for Bellus Primeaux and the same were counted in favor of Bellus despite said protests. That the Maturins were not duly qualified electors of the Town of Erath and were not entitled to participate in said primary election for the reason that they were not actual bona fide residents of the Town of Erath, La., for a period of four months next preceding the date of said primary election. That on December 10th, 1940 said Marturines moved from the Second Ward of Vermilion Parish, La., to Erath; that said Maturins did not reside in the Town of Erath prior to December 10th, 1940.
"D. That Edgar Touchet and Mrs. Edgar Touchet (Josephine Touchet) offered themselves to the commissioners of said election at Precinct One of Ward One in the Town of Erath, La., were permitted to vote by said commissioners over the protest and challenge of a duly qualified elector of the Town of Erath, which said protest and challenge were made in writing and attached to their respective ballots. That they marked their ballots for Bellus Primeaux and the same were counted for Bellus Primeaux despite said protests. That said Touchets were not duly qualified electors of the Town of Erath, La. and were not entitled to participate in said primary election for the reason that they were not actual bona fide residents of the Town of Erath, La., for a period of four months next preceding the date of said primary election. That said Touchets did not become residents of the Town of Erath, La., until January 13th, 1941."
He avers further that the total number of votes counted for all candidates was 3,253 *Page 277 
inclusive of the six votes mentioned in each of the foregoing paragraphs "A", "B", "C" and "D" which were illegally counted; that none of the said voters voted for him, and that they should not have been counted for Bellus Primeaux, as they were illegal, and should be deducted from his total of 324 votes. He avers that, deducting the said six votes illegally cast for Bellus Primeaux, he is left with a total of 318, and that, therefore, he (plaintiff) received more votes than the said Bellus Primeaux and is entitled to run and become a candidate in the second primary ordered by the Committee instead of the said Primeaux.
In the last paragraph of his petition plaintiff alleges that "in the circumstances hereinabove related and in view of the foregoing irregularities and frauds he is entitled to enter a second primary as candidate for said office of member of the Board of Aldermen of the Town of Erath instead of Bellus Primeaux."
The prayer of the petition is for citation on the said Bellus Primeaux and the Democratic Executive Committee of the Town of Erath, through its chairman, and that after proceedings there be judgment in his favor and against the said defendants, annulling, rescinding and setting aside the tabulation and promulgation of the said election held on April 8, 1941, insofar as the same orders the participation of Bellus Primeaux in said second primary to be held on May 13, 1941, for nomination to the office of member of said Board of Aldermen.
Plaintiff further prays that the Committee be ordered to declare him as being entitled to enter said second primary for the said office and to become a candidate for the nomination thereto, and to have his name placed on the ballot to be voted in said primary in lieu of the defendant, Bellus Primeaux.
To the petition of the plaintiff, both defendants filed exceptions of no cause of action and of no right of action. In the exception filed on behalf of the defendant. Bellus Primeaux, it is averred that plaintiff is without a right of action for the reason that Edward Peltier, Paul Maturin, Mrs. Paul Maturin (Wilda M. Maturin) Edgar Touchet, Mrs. Edgar Touchet (Josephine Touchet) and Ella B. Gary the voters allegedly challenged, were all duly registered to vote in the Town of Erath by the Registrar of Voters of the Parish of Vermilion and that the plaintiff cannot be permitted to attack collaterally their registration or their right to vote in the election.
These exceptions were duly argued and submitted to the District Judge and were expressly overruled by him, after which, the defendants each filed an answer in which the issues contesting the right of the six named voters to participate in said election, were met by proper denial. Otherwise, the answers admitted the allegations of the petition and affirmatively showed that all six of the challenged voters were duly qualified and registered to vote in said election more than thirty full days before the date thereof; that the challenges allegedly made against them and their right to vote constitute a collateral attack upon the registration of the said voters and their right to vote in said election, which form of attack is not permitted under the law.
Upon the issues as thus presented, the case was tried in the District Court, and after trial, judgment was rendered in favor of the plaintiff sustaining the attack on four of the said voters, which judgment had the effect of reducing the total number of defendant's votes from 324 to 320, thus eliminating him as a candidate in the second primary. The Court accordingly decreed that the tabulation and promulgation of the results of the primary election held on April 8, 1941, as made by the Democratic Executive Municipal Committee of the Town of Erath, be rescinded and annulled and set aside, and that its action also in ordering that Bellus Primeaux, defendant herein, enter into a second primary on May 13, 1941, be rescinded and annulled, and, further, that the plaintiff, Etienne LeBlanc, be entitled to participate in said second primary with U.J. Smith, and that the said Committee be ordered to so declare.
From the judgment as rendered, the defendants have perfected and are now prosecuting this appeal.
In considering the exception of no right or cause of action the first thing that strikes us is the fact that in plaintiff's petition, he alleges that he and another, J.H. Granger, received exactly the same number of votes, that is each 321. U.J. Smith, another candidate, received 322 votes, and, conceding, at this moment that the plaintiff did support his attack on the six votes cast for defendant, Bellus Primeaux, thus reducing his total to 318, the situation would then be as follows: Smith, with his 322 votes, would undoubtedly be entitled to participate in the second primary, and *Page 278 
Granger, having received exactly the same number of votes as plaintiff, would certainly be as much entitled as plaintiff to enter the said second primary with Smith. There does not appear, as far as we have been able to find, and we have made a diligent search of the record, anything to indicate why Granger should be ignored in this manner, as he apparently has been, except a mere statement found in the written opinion of the District Judge to the effect that "another," no doubt referring to candidate J.H. Granger, "is not contesting the election." Inasmuch as the petition on its face discloses this situation we doubt the authority of the Court to render a judgment, the effect of which would be to ignore and eliminate Granger from consideration in the second primary by ordering the Committee to include plaintiff as the opposing candidate to Smith who admittedly received more votes than either plaintiff or Granger. It is well established in our jurisprudence that the Courts will not entertain a contested election suit where the pleadings themselves show that the plaintiff cannot gain any advantage by having a judgment rendered in his favor. And, assuming that plaintiff is entitled to have the defendant, Primeaux, relegated to a position in respect to the number of votes received by him in the primary below that of Smith, Granger and himself, we are unable to see, as already stated, where the Court will be justified in ordering plaintiff and Smith to enter a second primary, and ignore Granger altogether.
We have reached the conclusion that the exception of no right or cause of action which was overruled by the District Judge, should have been sustained and, therefore, the judgment will have to be reversed. We do not want it to be understood, however, that we are basing our judgment, maintaining the exception, on the grounds which we have just mentioned, as we are convinced that there are far more cogent and serious reasons for which it should be sustained.
As has already been stated, the exceptions are based primarily on the proposition of law, as announced and laid down in numerous decisions, that the attack being one on the registration of these six voters and their right to vote flowing therefrom, cannot be made collaterally as is being attempted in this proceeding, but can only be made in direct proceedings in the manner and by the method pointed out by law. Counsel for plaintiff contend on the other hand, that as shown by the challenges made at the polls on the day of election, and as alleged in the petition, the attack is levelled at their right to vote regardless of their names being on the registration list as the challenges and the petition set out that none of them had the required residence qualifications of voters in the Town of Erath and therefore could not vote.
In the case of Duplessis v. Harrell, 9 La.App. 171, 119 So. 264, 265, one of the contested votes was "attacked for the alleged reason that [he] was not a resident of the ward in which [the] election was held," but the Court held that that allegation impliedly admitted that the voter was registered and the attack was said to be an indirect one upon his right to be on the registration list. It was, therefore, as stated by the Court, an attack on his right to be a registered voter which, it was held, must be made before the election and will not be entertained in a suit contesting the nomination by an unsuccessful candidate on that ground.
In Perez v. Cognevich, 156 La. 331, 100 So. 444, 447, there was involved an attack on the votes of eight persons who had voted at a certain precinct in a certain ward, on the ground, as set out in the opinion handed down by the Court, "that these voters resided outside of that precinct, and therefore had no right to vote in it." The Court evidently considered the attack on these voters as one aimed at their right to vote arising out of their registration for it stated: "If these persons had no right to vote because they were not entitled to a place upon the registration rolls, or because they were not entitled toregistration as voters in the precinct in which they registeredas such, or because their registration did not comply with the law in other respects, the proper proceeding should have been taken to purge their names from the rolls. Both the Constitution and the enactments of the Legislature contemplate direct proceedings against a voter to strike his name from the rolls, except, of course, when it appears that the voter has died, or it appears that since his registration he has been convicted of a felony, or has been declared insane. Section 5, art. 8, Constitution of 1921; sections 8, 9, 11, 12, and 13 of Act 122 of 1921. Were we to give our sanction to the attack here made, we could do so only by ignoring the methods provided by law for purging the rolls, and by permitting what is equivalent to a collateral attack upon the registration of the voters in question, which, of course, we cannot do. See Turregano v. Whittington, 132 La. 454, 61 So. 525, and Smith v. Police Jury, 125 La. *Page 279 
[124] 731, 51 So. [701] 703." (Italics ours.)
The constitutional provision mentioned is the same that is applicable at this time and although there was a new law enacted on the subject in 1940, its provisions are practically and substantially the same. See Art. VI of Act 45 of 1940.
But, in pursuing their argument further, counsel for plaintiff urge that in this case they have made allegations beyond those found in the numerous cases relied on by counsel for defendants, to the effect that these six voters' right to vote was duly challenged, according to law, and protested at the voting polls on the day of the election, and therein lies a distinction which takes this case out of the rule followed in the decision in those cases. The district judge agreed with these contentions of counsel for plaintiff and applied the distinction urged in overruling the exceptions.
Aside from the fact that it is impossible for us to conclude from the statements contained in the opinions handed down in any of the cases in which the question at issue was presented, that there was or was not a challenge as alleged in the petition in the present case, we are of the opinion that such challenge as provided for by Section 62 of Act 46 of 1940 is not meant to take the place of a direct action against the voter to have his name stricken from the registration list or to have him disqualified to participate in the election, which action has to be taken prior to the election. As is so positively noted in the case of Perez v. Cognevich, supra, the Constitution and the Statute provide for a purging of the registration rolls in the form of some contemplated direct proceeding against the voter himself to have his name stricken therefrom if it has been illegally placed thereon. The right to invoke such a proceeding is given to any qualified voter and necessarily it is a right enjoyed and to be used particularly by any interested voter who happens to be a candidate at a given election where such registration list is going to be used. The challenge or protest of a vote at the polls on the day of the election, on the other hand, is one aimed at the method of voting on the ground that, in the opinion of the challenger, either some fraud is being perpetrated or there is some irregularity taking place in the manner in which the voting is being conducted. The case of Bradley v. Neill, 174 La. 702, 141 So. 382, cited by the district judge in his opinion, bears out the distinction which we make for there it distinctly appears that the challenge and protest made at the polls was made because some of the commissioners of election had carried a ballot to each of these voters at his home to be there voted and then returned to the ballot box, which, of course, was clearly contrary to law. In such case, of course, there was no opportunity for a candidate to anticipate, before the election that such irregularity would be indulged in and he could not be expected to bring a proceeding to prevent the same. In Treadaway v. Plaquemines Parish Democratic Committee et al., La.App., 193 So. 609, 611, also cited by the District Judge, whilst it does appear that the Court, in assigning three separate reasons for setting aside the plaintiff's complaint that six voters were illegally registered and permitted to vote, did mention as the second of these reasons that he had not alleged that "the right of the illegally registered persons to vote was challenged at the polls and identified by a written protest attached to the ballot," it is to be observed that in support of that statement the case of Bradley v. Neill, supra is mentioned. As just pointed out however, the absence of a challenge as noted by the Court in the case of Bradley v. Neill, supra, related to challenges which should have been made to the right of certain voters to vote because of certain irregularities which took place at the polls during the process of the election itself, and not to their right to vote because they were illegally registered. Likewise in the Treadaway case, it is indicated that there were certain irregularities at the polls during the voting and the Court may have had these matters in mind in noting the absence of a challenge. Besides it is apparent that although the lack of an allegation to that effect was given as one of three reasons why plaintiff's averments did not constitute a valid ground of attack, the Court did not consider it the controlling reason.
We are of the opinion that there is a marked difference in those provisions of the law giving the right to challenge a voter at the polls and during the course of the election and those requiring a proceeding prior to the election against the voter himself to question his right to be on the registration roll or his right to participate in the election. As appears from the allegations of plaintiff in this case with reference to the challenge at the polls, it is clear that the challenge was made on the very ground on *Page 280 
which his petition would otherwise fail to disclose a cause of action and therefore we conclude, for the purpose of disposing of the exception, that that allegation adds nothing to the petition.
Finally, it is urged by counsel for plaintiff that this case presents an exception to the general rule which prohibits a collateral attack upon the registration of voters in a proceeding of this nature, for the reason that here, we are concerned with an election in a town or municipality comprised within the limits of two different voting precincts of a certain ward of the Parish of Vermilion, and as there is no registration of voters provided for in towns, it is impossible to comply with those provisions of the Constitution and the statute regarding the purging of the registration rolls.
We might mention at the outset that plaintiff's petition does not contain any allegation that the two precincts within the Town of Erath extend beyond the corporate limits of said Town. But, assuming that they do, and that some of the voters are properly registered and living in either of said precincts, outside of the limits of the corporation known as the Town of Erath, we are still of the opinion that the said provisions of law pertaining to the purging of the registration lists which apply to other subdivisions, apply to registration lists of voters in towns and municipalities. Section 3 of Article VII of Act 45 of 1940, requires the Registrar of Voters to file a complete certified list by ward and precinct of the registered voters of the Parish with the Clerk of the District Court of such Parish not later than twenty days prior to the date of any
primary, general or special election. (Italics ours.) The list so filed shall be open to the inspection of any qualified voter at all times. We must assume that the Registrar of Voters complied with his duty and filed a list of the qualified voters in the Clerk's office of Vermilion Parish, as required by this Section, showing the names of those persons who were entitled to vote in the Town of Erath at the primary election held on April 8, 1941. We feel justified in this assumption, particularly in this case, because we find in the record that such a certified list of voters was filed showing among them all, the names of five of the voters, whose right to vote is attacked in this suit.
Whether we base our statement or presumption of law that the Registrar filed this list, as required of him by the above mentioned Statute, or whether we base it on the actual filing of this list, as shown by the record, plaintiff had an opportunity, prior to the election, to question the right of these five persons to vote, whose names appear on the list on file in the Clerk's office of Vermilion Parish. In other words, the situation with respect to the plaintiff as to his right and opportunity of having those names stricken from this list prior to the election was not different from the opportunity given any other candidate in any other election to do the same thing.
Moreover, according to the allegations of the petition, four of the voters whose right to vote is questioned in this suit, viz: Paul Maturin, Mrs. Paul Maturin, Edward Peltier and Ella B. Gary, were not qualified voters at either of these precincts whether they resided within or without the corporate limits of the Town of Erath. As to these therefore, there can be no distinction made with reference to the erasure of their names from the rolls, than would be the case in any other election involving all the voters in the two precincts, and certainly the attack on this registration could not be entertained in this proceeding.
Besides, there appears to us to be some authority in at least two decisions of the Supreme Court, that such a distinction as is claimed to exist by counsel for the plaintiff does not prevail, for, in the case of Turregano v. Whittington,132 La. 454, 61 So. 525, the contest involved an election for mayor of the City of Alexandria, and the Court applied the rule that a collateral attack cannot be directed against a voter for the purpose of striking his name from the registration rolls. In the other case, Doughty v. Allen, 170 La. 556, 128 So. 514, which involved a contest over an election for the office of marshal in the Town of Tullos, four out of five votes were contested, for want of required residence in the town, as appears from the statement made in the opinion, and still the Court dismissed the attack on the ground that it was in the nature of a collateral attack upon the registration of such voters, and, as such, it was not permissible in a proceeding contesting an election.
The conclusions herein reached lead to a reversal of the judgment appealed from as was so held in the decree handed down at Lake Charles, La., on Thursday, May 8, 1941, in support of which these reasons are now being filed in the record. *Page 281