PER CURIAM.
This matter is before the Court on an appeal from a decision of the Eighteenth Judicial District Court declaring the nomination of J. Gerald Dupont as the Democratic Nominee for the office of Clerk of Court of the Parish of Iberville on the Court’s determination that appellant, Mrs. Theresa Jackson Delacroix, received 4596 votes and Mr. Dupont received 4597 votes, the Trial Court having concluded to subtract ten spoiled ballots from those accorded to Mrs. Delacroix by the Iberville Parish Democratic Executive Committee and eight spoiled ballots from that attributed to Mr. Dupont, thus changing the certification of the Committee to the effect Mrs. Delacroix had been elected by a vote of 4606 to 4605.
In the argument before this Court the issue presented to us for resolution, in our opinion, resolves itself into a determination of the validity of certain absentee ballots cast in the election.
In considering the objections to the eighteen ballots involved herein, as urged by the parties we intend to follow the rationale enunciated by the Supreme Court in Courtney v. Abels, 205 La. 559, 17 So.2d 824, wherein it is stated:
“As was very aptly pointed out by the Court of Appeal for the First Circuit *34 in the case of Hebert v. Landry [La.App.], 193 So. 406, 408: ‘The law and the courts as well are no doubt ever zealous in guarding the secrecy of the ballot, and that is why a ballot which bears any distinguishing mark by which it may later be identified and thus lend encouragement to bribery and corruption in elections will be rejected. A distinction, however, has to be made between such a mark and one which, on the other hand, merely indicates the attempt of the voter to correct a mistake honestly made by him in marking his ballot, for again the courts and the law are equally as zealous in safeguarding and protecting the right of the voter to cast his ballot and to have it counted.’
“While the primary statute does specifically declare that a voter shall designate his choice of a candidate for each particular office by marking a cross with a pencil containing black lead in the voting square to the right of, and opposite, the names of the candidates for whom he desires to vote, and that after marking his ballot he must have the numbered stub or slip removed by one of tíre commissioners before it is placed in the ballot box (Section 70 of Act No. 46 of 1940), as was also pointed out by the court in the Hebert case, ‘There is no provision in the primary election law of this state relating to what is or what is not a marked or spoiled ballot, and it is well, therefore, for us to refer to the general law on the subject.. In Ruling Case Law, volume 9, page 1136, under the topic “Elections,” it is stated:
“ ‘A distinguishing mark prohibited by the law is such a mark as will separate and distinguish the particular ballot from other ballots cast at the election. It is some sort of mark put on a ballot to indicate who cast it, and to furnish means of evading the law as to secrecy. Therefore, not every mark made by a voter on his ballot which may separate and distinguish the particular ballot from other ballots cast at the election will necessarily result in a declaration of invalidity. If it appears from the face of the ballot that the marks or writing were placed thereon as the result of an honest effort on the part of the voter to indicate his choice of a candidate among those to be voted for at the election and that the voter did not thereby pretend or attempt to indicate who voted the ballot, the ballot should not be rejected as to candidates for whom there is a choice expressed, in compliance with the requirements of the statutes.’ ” See, also, Turregano v. Whittington, 132 La. 454, 61 So. 525; and 29 C.J.S., Elections, § 183, p. 269, and those following.
"While we have found that there are some expressions in our jurisprudence, particularly in those citations on behalf of the contestant, that seem to convey a contrary view, we think the above quotations express the more logical and sound view as well as the one most in keeping with the spirit of our democratic form of government that does not countenance anything conducive to the frustration of the right of the electorate to freely express their choice or selection of those persons into whose hands they desire the discharge of governmental functions to be placed. It ivas with this philosophy in mind that the entire court sitting at the hearing of this case reviewed and carefully scrutinised each of the ballots contested by the contestant * * (Italics ours)
Counsel for Appellee relies upon Bell v. Guenard, 194 La. 956, 195 So. 504. We are of the opinion that this case was overruled in the Abels case, supra. In answer counsel contends the case of State ex rel. Harris v. Breithaupt, 220 La. 1042, 58 So.2d 333 reinstated the law of the Guenard case as it was cited with approval therein. We do not agree with this interpretation of the effect of the citation of the Guenard case. *35 The Breithaupt case only involved the question of whether the ballots, most of which were soiled with ink and had been used in the election were in compliance with LSA-R.S. 18:284, 18:316, and the Court held that such ballots did not meet the requirements of the law and under LSA-R.S. 18:320 “are void for all purposes and shall not be received, deposited, or counted by any commissioner of the primary.” It is true that the Court did cite the Guenard case and apparently approved of the doctrine of that case as to “defaced or torn or marked otherwise than provided by law are treated as ballots marked for identification.” In the paragraph following the citation of the case the Court stated:
“The defendant has cited a number of authorities dealing with ballots which had been marked or injured by the voter or through error of the commissioners in counting the votes. These authorities are not in point for the reason that the issue here presented is whether or not the ballots containing the ink splotches were legal ballots or such ballots as could be used in holding a primary election.”
Although there were eighteen questioned absentee votes, by stipulation of counsel this was reduced to eleven, and accordingly we will review each of those individually. To simplify the matter we shall refer to the questioned ballots, giving the citation of the exhibit numbers. The following votes which were questioned were cast in favor of Mrs. Delacroix and are be-' fore us for consideration:
P-43. A ballot marked by an erasure appearing in the column provided for the vote in the race for Comptroller in which there was an erasure in the voter’s approbation of Mr. Theriot. The Trial Court concluded this ballot to be void in its entirety.
P-10. There was a tear on the ballot which by evidence from witnesses was shown to have been done by one of the commissioners.
P-41. There was a tear of the ballot.
P-16. There was an erasure on that portion of the ballot wherein the voter cast his vote for Mr. Morrison, candidate for Governor, as well as a tear on the right corner of the ballot.
P-6. There appears to be two smudges on the lower portion of the ballot.
P-21. There were three dots made in the form of a pyramid located at bottom of ballot below the printed portion thereof.
P-47. In Ward 8 where this particular voter cast his ballot there was a contest for the office of constable. In voting absentee he was supplied with a ballot which included all of the precincts in Iberville Parish but excluded Ward 8, in consequence of which the voter was not afforded an opportunity to cast his ballot for the office of constable.
Insofar as the above ballots are concerned we find nothing as to the first five and the last one to even suggest there was any fraud or intent on the part of the voter to identify his vote. However, as to the ballot which was marked with the three dots we believe same to be invalid inasmuch as the identification could have been made purposefully. We find therefore the six ballots in question must be counted in favor of Mrs. Delacroix.
For Mr. Dupont there was cast a ballot marked D-28 which bore on the corner thereof a red line which in our view as we opined in reference to the three dots could be easily used as an identification mark and accordingly is invalid.
D-27 was torn.
D-15 had the corner torn off.
D-24 likewise had the corner torn off.
From our observation of the absentee ballots themselves and from our review of the exhibits, it is apparent the tears were done inadvertently by the commissioners and the voters should not be disfranchised. We find therefore three of said absentee ballots must be counted in favor of Mr. Dupont.
*36 With our conclusions in result to the ballots in contest, it is apparent Mrs. Delacroix has been nominated by a vote of 4602 to 4600 for Mr. Dupont.
Accordingly, the judgment of the Trial Court is reversed and the Iberville Parish Democratic Executive Committee is ordered to certify the name of Mrs. Theresa Jackson Delacroix as the duly elected nominee for Clerk of Court of the Parish of Iberville, Louisiana, in the election to be held March 3, 1964.