PER CURIAM.
This is an election contest instituted under the provisions of LSA-R.S. 18:364. Since the' law requires that a decision be rendered within 24 hours after the submission of the case, we are handing down our judgment in this case today and assigns written reasons therefor.
We have carefully examined the record and briefs and we have considered the oral arguments advanced by counsel. We conclude that plaintiff has laid proper foundation for a recount of the absentee ballots cast in some of the precincts in St. Martin Parish, Louisiana. We also have reviewed individually each contested ballot in this case, and though we differ with the trial judge as to the validity of certain specified ballots, we nevertheless find that the ultimate result reached by the trial judge in finding that a second primary is necessary is correct, and we, therefore, concur in that determination.
The judgment appealed from is affirmed insofar as it decrees that J. Burton Angelle and Robert Angelle be declared to be in a run-off election for the office of Represen *584 tative for St. Martin Parish, Louisiana, to be held in a second primary election on December 16, 1967. All other issues presented, including the assessment of costs, are determined by the formal reasons assigned.
HOOD, Judge.
As stated in our original per curiam opinion, this is an election contest filed under the provisions of LSA-R.S. 18:364. The suit was filed by J. Burton Angelle against Robert Angelle, Dalton Thibodeaux and the St. Martin Parish Democratic Executive Committee. The plaintiff and the first two named defendant were candidates for the office of Representative for St. Martin Parish, Louisiana, at a Democratic Primary election held on November 4, 1967. After that election the St. Martin Parish Democratic Executive Committee promulgated the following results:
J. Burton Angelle 5631 votes
Robert Angelle 5322 votes
Dalton Thibodeaux 312 votes.
A total of 11,265 persons voted in that election, and according to the results promulgated by the Democratic Executive Committee, none of the three candidates obtained a majority of the votes cast in that primary election.
Pursuant to the provisions of LSA-R.S. 18:364, plaintiff instituted this suit demanding a recount of the absentee ballots in 12 of the 23 precincts in St. Martin Parish. He also demanded that all of the absentee ballots cast in Ward 5, Precinct 4, of that parish be declared to be null and void because of the violation of the requirement of secrecy in the counting of the absentee ballots by the commissioners.
Robert Angelle and the Parish Democratic Executive Committee answered, denying that a recount of the absentee ballots cast in that election would change the results of the election, denying that there had been no reasonable opportunity for tampering with the election boxes, and denying that the absentee ballots cast in Ward 5, Precinct 4, should be decreed to be null and void. Defendant Robert Angelle in his answer also demands, in the alternative and in the event the court determines that plaintiff is entitled to the relief which he seeks: (a) That there be a recount of the ballots cast in all other precincts; (b) that one additional vote be added to the total received by said defendant, because of the refusal of the commissioners at one precinct to allow Hubert Journet to vote after he signed the poll list; (c) that seven additional votes be added to the total number of votes cast for Robert Angelle because of the malfunction of two voting machines; and (d) that two votes be added to the total of Robert Angelle because of an error made by the Parish Democratic Executive Committee in the tabulation of the votes counted for that candidate.
The trial court held that plaintiff was entitled to a recount as demanded. A recount of the votes was then made, and judgment was rendered by the trial court decreeing: (a) That ten votes should be deducted from the official promulgation of votes accorded J. Burton Angelle, reducing J. Burton Angelle’s total to 5621 votes; (b) that six votes be deducted from the official promulgation of votes accorded Robert Angelle, but that two votes he accorded to him because of an error made in the official tabulation of votes, resulting in a final tabulation for Robert Angelle of 5318 votes; and (c) that one vote be deducted from the official promulgation of votes accorded to Dalton Thibodeaux, reducing his total to 311 votes. The court then decreed that J. Burton Angelle and Robert Angelle were to be candidates in a second primary election for the office of representative of St. Martin Parish, to be held on December 16, 1967. The court rejected the demands of defendant Robert Angelle that one additional vote be added to his total because of the refusal of the commissioners to permit Hubert Journet to'vote, and that seven additional votes be registered in favor of *585 Robert Angelle because of an alleged malfunctioning of some voting machines. And, finally, the trial court reserved to defendant the right to have a recount of all of the remaining boxes in St. Martin Parish. Plaintiff J. Burton Angelle has appealed.
A companion suit was instituted by Robert Angelle against the Parish Democratic Executive Committee and its chairman, in which suit the plaintiff seeks to mandamus the defendant committee to correct an error in its tabulation of votes cast for representative, with the result that plaintiff, Robert Angelle, would be certified as having received two more votes than had been shown in the official promulgation. The trial court rendered judgment in that case granting to plaintiff, Robert Angelle, the relief which he sought. The defendants appealed. We have rendered judgment dismissing the appeal in that case as being moot. See Angelle v. St. Martin Parish Democratic Executive Committee et al., 204 So.2d 591 (No. 2265 on our docket).
In the instant suit we direct our attention first to the question of whether there had been a reasonable opportunity of tampering with the ballot boxes after the commissioners had closed them. Defendant Robert Angelle contends that there were four opportunities for tampering with the ballot boxes, and he describes them as follows: (1) The keys to some of the voting machines (in the Sixth Ward of St. Martin Parish) were not delivered to the Clerk of Court, as required by LSA-R.S. 18:1190, subd. D, until about 1:00 o’clock on Sunday morning, about five hours after the voting machines had been closed. (2) On November 7, the voting machines were opened at the warehouse in which they were being stored in the presence of the chairman of the Parish Democratic Executive Committee, the Clerk of Court and about 50 other people, and the envelopes containing the absentee ballots were taken out of the machines and were put in a box. The box containing these envelopes and ballots remained in the warehouse, in the presence of the above mentioned people, while all of the machines were being opened, and the box was then put in the Clerk’s automobile and transported first to his office and then to a bank vault. (3) The envelopes containing the absentee ballots were left on a couch in the Clerk’s office during the noon hour on November 7, immediately before they were taken to the bank vault. (4) The envelopes containing the absentee ballots were put in a cardboard box, sealed only with scotch tape, and this box was kept for about seven days in a vault at a local bank where 13 employees and all directors of the bank had access to the vault.
Section 86 of Act 46 of 1940 (now LSA-R.S. 18:364) contains the following pertinent provisions: “However, before any box is thus recounted satisfactory evidence shall be produced to the court that the box or the contents thereof have not been tampered with or disturbed subsequent to its closing by the commissioners.”
The general rule which was applied prior to the enactment of Act 46 of 1940 was stated by our Supreme Court in McConnell v. Salmon, 174 La. 606, 141 So. 73 (1932), as follows:
“The general rule which prevails in this state and elsewhere is that the burden is upon him who seeks to offer the ballots in evidence to prove with reasonable certainty that they have not been tampered with since the election, or that their preservation has been such as to exclude any reasonable opportunity of tampering with them, or that they have been so kept as to render it improbable that they could have been tampered with. It is not necessary, however, that the party show that tampering with them was impossible.”
Since the enactment of the 1940 act, it has been judicially determined that that Act made no change in the above stated general rule which was applied in the McConnell case. In Guillory v. Evangeline Parish Democratic Executive Committee, 220 La. *586 888, 57 So.2d 758 (1952), the Supreme Court said:
“ * * * We do not think there is any material difference between the degree of proof required by the statute and that required by the general rule recognized before its enactment. We do think that proof should be made that there has been no reasonable opportunity for the box or it contents to have been tampered with in order to comply with the statutory requirement of satisfactory evidence.”
Other cases which we thinks are pertinent to this issue and which we have considered are Constantin v. McNeely, 141 So.2d 684 (La.App. 3d Cir. 1962); Hill v. Vernon Parish Democratic Executive Committee, 56 So.2d 868 (La.App. 1st Cir. 1952); and Kling v. De Armand, 57 So.2d 234 (La.App. 1st Cir. 1952).
LSA-R.S. 18:1190, subd. D, upon which defendant Robert Angelle relies in support of his first argument, prescribes no time limit within which the keys to the voting machines must be. returned to the Clerk of, Court. We do not consider a period of five hours from the time the polls closed until the time the keys to some of the Ward 6 machines were delivered to the Clerk to be unreasonable in this case, or as indicating that the boxes might have been tampered with. We cannot agree with plaintiff that an opportunity for tampering with the ballots occurred in the warehouse while the machines were being opened. We think the fact that there were at least 50 people in close proximity to the machines when they were being opened renders it highly unlikely that anyone could have tampered with the votes without being detected. Also, when the envelopes were transferred to the Clerk’s automobile, the car was locked immediately by a Deputy Clerk of Court, and it remained locked until the ballots were transported to the Clerk’s office. The car keys were kept in the custody of the Deputy Clerk during the delay of a few minutes before they were taken to the Clerk’s office, and the Deputy Clerk drove the car in which the ballots were transported to that office.
We also believe there was no “reasonable opportunity” to tamper with the ballots when they were left in the Clerk’s office during the noon hour. The evidence shows that this was the Clerk’s “private office,” and that the office was kept locked during that hour. There were only two keys, to the office, one being in the possession of the Clerk and the other in the possession of the janitor. It is highly improbable that the ballots were, tampered with during that time.
The last alleged opportunity to tamper with the ballots occurred when the box containing the absentee ballots was stored in a local bank vault for seven days. The record reveals that the box containing the ballots was sealed with “Scotch Tape” and was initialed by the Clerk. It was carried into the vault in the presence of the Vice President of the bank and the vault was then locked. This officer of the bank testified that he saw no one tamper with the box. The Clerk of Court and the Deputy Clerk of Court who had assisted in sealing up the box of ballots stated that to the best of his knowledge the box was in the same condition at the time of trial as it was when placed in the bank vault.
Our conclusion is that there is “satisfactory evidence” that the ballots which the parties to this suit seek to have recounted were not tampered with or disturbed after the election, and that the trial judge did not err in ordering a recount of the votes.
At the trial plaintiff challenged the validity of about 62 ballots which had been cast either for Robert Angelle or for Dalton Thibodeaux. Defendant Robert Angelle challenged the validity of about 38 ballots which had been cast for plaintiff. These ballots were challenged or objected to on the ground that they contained distinguishing marks which could serve to identify the ballot or to indicate who cast the votes *587 shown in it, and thus the requirement of secrecy could be violated.
As we have already noted, the trial judge concluded that ten ballots which the official promulgation had accorded to J. Burton Angelle were invalid, that six ballots accorded to Robert Angelle were invalid, and that one vote which had been cast for Dalton Thibodeaux was invalid. After deducting the void ballots, the trial judge concluded that plaintiff had received a total of S621 votes while his opponents received a total of 5629 votes. He held, therefore, that plaintiff had failed to obtain a clear majority of the votes cast for that office and that a run-off or second primary election was necessary.
The general rule which must be applied in determining whether a ballot should or should not be decreed to be invalid because of distinguishing marks was clearly set out by our Supreme Court in Courtney v. Abels, 205 La. 559, 17 So.2d 824 (1944). In that case the court quoted with approval the following statement from Ruling Case Law, volume 9, page 1136, under the topic of “Elections”:
“ ‘ “A distinguishing mark prohibited by the law is such a mark as will separate and distinguish the particular ballot from other ballots cast at the election. It is some sort of mark put on a ballot to indicate who cast it, and to furnish means of evading the law as to secrecy. Therefore, not every mark made by a voter on his ballot which may separate and distinguish the particular ballot from other ballots cast at the election will necessarily result in a declaration of invalidity. If it appears from the face of the ballot that the marks or writing were placed thereon as the result of an honest effort on the part of the voter to indicate his choice of a candidate among those to be voted for at the election and that the voter did not thereby pretend or attempt to indicate who voted the ballot, the ballot should not be rejected as to candidates for whom there is a choice expressed, in compliance with the requirements of the statutes.” ’ See, also, Turregano v. Whittington, 132 La. 454, 61 So. 525; and 29 C.J.S., Elections, p. 269, § 183 and those following.”
In the recent case of Cusimano v. O’Niell, 192 So.2d 147 (La.App. 1st Cir. 1966), our brothers of the First Circuit Court of Appeal stated, correctly we think, that:
“It is settled jurisprudence that the law and the courts as well regard the secrecy of the ballot as sacred and are most fervent in protecting, guarding and insuring the right of a voter to cast his vote in a free election without fear of his decision being known or disclosed. A ballot susceptible of identification by any distinguishing mark or characteristic pursuant to which it may subsequently be identified, tends to promote bribery of voters thus leading to corruption in elections, and to avoid such undesirable result will be rejected as invalid and illegal. Courtney v. Abels, 205 La. 559, 17 So.2d 824. A distinction is made, however, between a mark which on one hand will identify a ballot as having been cast by a particular voter and one which, on the other hand, merely indicates the attempt of an elector to correct an honest mistake or error in marking his ballot because the courts are equally ardent to preserve and safeguard the right of the voter to cast his ballot and have it counted. Courtney v. Abels, supra.”
Other cases which we have considered in determing the validity of the ballots which have been challenged in this case are: Turregano v. Whittington, 132 La. 454, 61 So. 525 (1913); Vidrine v. Eldred, 153 La. 779, 96 So. 566 (1923); Perez v. Cognevich, 156 La. 331, 100 So. 444 (1924); Brantley v. Smith, 6 La.App. 182 (1927); Owens v. Woods, 8 La.App. 194 (1928); Nolan v. Martin, 8 La.App. 202 (1928); Jacobs v. Cutrer, 17 La.App. 383, 136 So. 119 (2d Cir. 1931); Crooks v. Chevallier, *588 156 So. 586 (La.App. 2d Cir. 1934); Bell v. Guenard, 194 La. 956, 195 So. 504 (1940); State ex rel. Bender v. Delery, 3 So.2d 204 (La.App. Orl.Cir. 1941); State ex rel. Harris v. Breithaupt, 220 La. 1042, 58 So.2d 332 (1952); State ex rel. Dugas v. Lehmann, 220 La. 864, 57 So.2d 750 (1952); Dupont v. Delacroix, 160 So.2d 33 (La.App. 1st Cir. 1964).
With these rules in mind, we have concluded that a total of seven of the challenged ballots are void and should not be counted. These include four ballot (identified as Exhibits R-2, R-10, R-23 and R-32) which were cast for J. Burton Angelle, two ballots (identified as Exhibits B-10 and B-41) which were cast for Robert Angelle, and one ballot (identified as Exhibit B-ll) which was cast for Dalton Thibodeaux.
Each ballot was printed in such a manner that it contained spaces for the voter to indicate his choice of candidates for a number of offices, including the office of Governor, Commissioner of Insurance, Sheriff, Clerk of Court and others, as well as for the office of Representative.
On the ballots identified as Exhibits R-2 and B-10 the “X” marks opposite the names of candidates were made with pen and ink, rather than with a pencil containing black lead, as required by LSA-R.S. 18:349 and R.S. 18:1074. The trial judge rules that both of these ballots were invalid and should not have been counted, and we agree with that ruling. See Cusimano v. O’Niell, supra.
In the ballot marked R-10, the voter cast a vote for representative by marking an “X” mark in the square opposite plaintiffs’ name, and then he superimposed a distinct check mark over the “X”. No such combination of marks was used by the voter in voting for any other candidate on that ballot. The trial judge held that the ballot was invalid as containing a distinguishing mark which could be used to identify the voter who cast it. We agree that the ballot is invalid. See Cusimano v. O’Niell, supra.
R-23 was held to be void by the trial judge because only a small portion of the numbered perforated slip attached to the ballot had been removed, contrary to the provisions of LSA-R.S. 18:1074. The portion of the slip which contained the number had been torn off, but at least two-thirds of the remainder of the perforated slip is still attached to the ballot. We agree that the ballot is invalid and should not have been counted.
On the ballot identified as R-32 there appears a large cross mark or an “X” across the ten names listed as candidates for the Parish Executive Committee at Large. Each arm of the cross mark is two or three inches long. The trial judge ruled that the ballot was valid because the marking “has nothing to do with the square of the voting for representative.” We think the large cross mark clearly distinguishes that ballot and enables it to be identified. We thus disagree with the trial judge, and hold this ballot to be invalid.
B^ll was held to be invalid by the trial judge because the voter used a check mark instead of an “X” to indicate his vote opposite each candidate’s name. We agree with that ruling.
The ballot identified as B-ll is marked by a hole, about one-fourth of an inch in diameter, which has been burned in a corner of the ballot. The trial judge held the ballot to be invalid, and we agree with that ruling.
We are unable to agree with the trial judge in his conclusion that 11 other ballots were void. Eight of these ballots (Exhibits R-6, R-12, R-13, R-21, R-38, B-20, B-27 and B-^10) were held to be invalid because of dots or other marks appearing on them. Some of the dots or markings complained of on these ballots are so faint and minute that they are difficult *589 to see. The dots and other markings appear to us to have been made by the voter when he inadvertently permitted his pencil to touch the ballot as he was voting or was preparing to vote. We have examined all of these ballots carefully, and we are convinced that none of the marks on these ballots could serve to identify a particular ballot. We think the trial judge erred in holding that they were invalid.
B-20 and R-6 were held to be invalid by the trial judge for the additional reason that there were erasures on each ballot in a square opposite the name of a candidate for representative. R-l and B-30 also were declared to be invalid because of similar erasures. The trial judge ruled that at least ten other ballots were valid which contained erasures, although in each such instance the erasure occurred opposite the name of a candidate for an office other than that of representative. We have examined all of these ballots and have concluded that there is no distinguishing feature in any of these erasures which might reasonably be assumed to have been intended by the voter as a marking of the ballot, or which might enable the ballot to be identified.
R-20 was held to be invalid by the trial judge because of an irregularity in the way the “X” was marked opposite the name of plaintiff. We have examined the ballot and fail to see any irregularity in the marking which could serve to identify that ballot. We, therefore, disagree with the trial judge in his ruling.
Several other ballots were challenged by plaintiff or by defendant Robert Angelle. Approximately 25 of them were objected to on the grounds that on some ballots a part of the cross mark made by the voter extended outside the square, that on others the “X” resembled a “Y”, a “T” or a cross, and that on some the “X” was retraced with pencil after it had been originally marked. The trial judge held that none of these alleged irregularities were made for the purpose of marking the ballot for later identification, and that the marks were not sufficient to enable any such ballot to be identified. We agree with that ruling. A few ballots were objected to because they were torn in places, but the trial judge ruled that they were valid. We concur in that holding. It appears to us, as it did to the trial judge, that the tearing or mutilating of the ballots occurred while the commissioners were handling and counting them, that they were not made by the voter for the purpose of marking the ballots, and that they were not of such a nature as to enable any ballot to be identified. Several ballots were objected to on the ground that erasures appeared in squares opposite the names of candidates for offices other than that of representative, and in each such case the trial judge held, correctly we think, that the ballots were valid. On three ballots the word "spoil” was written in pen and ink on a part of the ballot. A commissioner testified, however, that he wrote these words on each of these ballots while the absentee ballots were being counted, and the trial judge held that these acts of the commissioner did not cause the ballots which he marked to be invalid. In one instance a voter placed an “X” mark after the name of each of the five candidates for Governor, and we agree with the trial judge that this did not invalidate the ballot insofar as the vote for representative was concerned. And, finally, a few ballots were objected to on the ground that each contained a smudge or a discolored spot on it. We think, as did the trial judge, that these smudges or spots were not placed on the ballots intentionally, and that they are not sufficient to enable the ballot to be identified.
 Plaintiff argues that all ballots cast in Ward 5, Precinct 4, should be decreed to be void for two reasons. One of these reasons is that the commissioners in that precinct counted each absentee ballot immediately after the flap of the envelope *590 containing that ballot was torn off, instead of first removing all of the flaps before any of the envelopes were opened and before any of the absentee ballots were counted as required by LSA-R.S. 18:1076. In Jarreau v. David, 74 So.2d 218 (La.App. 1st Cir. 1954), our brothers of the First Circuit held that the act of the commissioners in opening the envelopes containing each of the ballots and counting them at that time, instead of putting them in a ballot box without identifying the individual casting his ballot with the envelope when opened, was not such an irregularity as would destroy the validity of the election where “the electors have had a. fair and free opportunity to express their will, and have so expressed it”. We agree with that reasoning, and we hold, therefore, that the first ground urged by plaintiff for declaring the absentee ballots in that precinct to be void is without merit. The second ground urged by plaintiff in support of this demand is that a commissioner in that precinct placed large check marks on each ballot as the commissioner called out and counted the votes cast by that ballot. A total of 29 absentee ballots were cast in that precinct, and 21 of them have these large check marks. The commissioner testified that as she called the votes off to the other commissioners she placed a check mark, made with pencil, opposite each vote which had been counted, and that this was done by her to insure that the same vote would not be counted twice. The commissioners were in good faith, and there is ho suggestion that the marks were made for the purpose of identifying any ballot. Under these facts, we agree with the trial judge that the ballots are valid and should be counted.
Defendant Robert Angelle demands that he be credited with ten additional votes. He contends that he is entitled to be accorded seven of these ten additional votes because two malfunctioning voting machines failed to record that number of votes which were cast for him. He also contends that he is entitled to be credited with one more vote because the commissioners refused to allow Hubert Journet, a duly registered and qualified elector, to cast a ballot for him in one of the precincts, and that he is entitled to two additional votes because of an error in computation made by the Democratic Executive Committee. We consider it unnecessary to consider these arguments, because the granting or rejecting of these particular demands of defendant would not change the results which we have reached on other evidence as to the necessity of a second primary election. We express no opinion, therefore, as to these last mentioned issues.
After deducting the invalid or spoiled ballots from the totals officially promulgated by the Democratic Executive Committee, we conclude that at the primary election held on November 4, 1967, the candidates for representative received the following votes:
J. Burton Angelle 5627
Robert Angelle 5320
Dalton Thibodeaux 311
Plaintiff received 5627 votes and his two opponents received a total of 5631 votes at this election. Plaintiff, therefore, failed to receive a majority of the votes which were cast, and the trial judge correctly decreed that a run-off or second primary election is necessary.
For the reasons herein assigned, the judgment appealed from is amended to decree: (a) That there be deducted from the official promulgation of votes accorded J. Burton Angelle four votes, reducing the said J. Burton Angelle’s total to 5627 votes; and (b) that there be deducted from the official promulgation of the votes accorded Robert Angelle two votes, reducing the said Robert Angelle’s total to 5320 votes. In all other respects, and except as herein specifically amended, the judgment áppealed from is affirmed. We specifically affirm that portion of the judgment appealed from which decrees that J. Burton Angelle and *591 Robert Angelle be declared to be in a runoff for the office of Representative for St. Martin Parish, Louisiana, to be held in a second primary election on December 16, 1967.
All costs of this appeal are assessed to plaintiff-appellant.
Amended and affirmed.