No. 3269

Second Circuit

---

CARTER v. MARTIN

---

(March 20, 1928.   Opinion and Decree.)
(March 22, 1928.   Rehearing Refused.)

---

*(Syllabus by the Editor)*

1.   **Louisiana Digest—Elections by the People—Par. 73, 78, 80.**

Although under Constitution 1921, Art. 8, Section 5, and Act 122 of 1921 direct proceedings to purge registration rolls were provided, the question whether voter at primary election had no right to vote because not legally registered or not entitled to register, could not be raised by collateral attack; this, however, does not apply to registration less than the 30 days' time limit before election, because parties interested would not have time to remove the names from the rolls before the election took place.

2.   **Louisiana Digest—Election by the People—Par. 85; Appeal—Par. 552, 553.**

Under Section 27 of Act 97 of 1922 "No application of rehearing shall be entertained, but the Courts may correct manifest errors to which their attention may be called upon their own motion in contests of elections."

Appeal from the Eighth Judicial District Court of Louisiana, Parish of Winn. Hon. F. E. Jones, Judge.

Action by R. B. Carter against C. M. C. Martin.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

E. E. Kidd; Harry Fuller, of Winnfield, attorneys for plaintiff, appellee.

Moss & Moss, of Winnfield, attorneys for defendant, appellant.

REYNOLDS, J. Plaintiff sues defendant to have himself rather than defendant declared the nominee of the Democratic Party for the office of police juror of ward eight of the parish of Winn, State of Louisiana, at the primary election held on February 28, 1928. The facts appear in the opinion. There was judgment for the plaintiff and defendant appealed.

## OPINION.

Our learned brother of the District Court in a written opinion in the case summed up the facts therein and the law applicable thereto as follows:

"This is a contest suit as to who shall be the Democratic nominee for police juror in ward eight of the parish of Winn. The plaintiff alleges that he received eighty-six (86) and the defendant eighty-seven (87) votes according to the returns promulgated by the Parish Democratic Executive Committee. He alleges that two (2) of the votes cast for the defendant were illegal, null and void and were cast by Mr. and Mrs. Roy Sanders. He alleges as the reason of the illegality of these votes, that both were registered voters of ward seven (7) and that they voted and participated in the ward election of ward seven (7) on the seventeenth of January,

1928, and that they had fraudulently had their voting precinct changed from ward seven (7) to the Calvin precinct in ward eight (8) and that the manner of change was illegal and not according to law. The defendant files an exception of prescription and no right and cause of action, and filed his answer denying the contention of plaintiff, and then alleging that the plaintiff received six (6) illegal votes which should be deducted from the number that the plaintiff received in the election.

"The exceptions were referred by the Court to the merits. The Court is of the opinion that the exceptions are not well taken.

"The Democratic Executive Committee met at noon on the first day of March, 1928, and about twenty (20) minutes before one (1) p. m. promulgated the returns.

"This lawsuit was filed at twelve ten (12:10) p. m. on March 3rd.

"The law provides that the suit must be brought within two (2) days, and the plaintiff has complied with this requirement.

"The exception of no cause of action is not well taken, as the Court is of the opinion that the petition states a cause of action.

"Evidence was offered to show that the political residence of Mr. and Mrs. Roy Sanders was not in ward eight (8), but was in ward seven (7). These two witnesses had lived in ward seven (7) their entire lives. Their parents lived in this ward and the two had registered and paid their poll tax in ward seven (7) and had voted there on the 17th day of January, 1928, for the father and father-in-law of these two voters. He having no opposition in the second primary, on the 25th day of February, 1928, they requested the registrar to change their registration to Calvin precinct in ward eight (8). They made no written application or affidavit but merely gave a verbal order.

"This testimony was objected to by defendant and was admitted subject to the objection. There is no question that Mr. and Mrs. Roy Sanders had no legal right to a political domicile at Calvin, if this Court has authority to pass upon the subject matter.

"The defendant offered similar testimony as to the political residence of the witnesses, O. B. Bice, Mr. and Mrs. W. H. Carter, and Mr. and Mrs. B. R. Carter,

and abandoned their inquiry as to Miss Bertha Machen.

"The evidence showed that Mr. and Mrs. B. R. Carter had not lived in ward eight (8) for eight (8) years but they had never voted at any other precinct.

"Mr. and Mrs. W. H. Carter had not lived in ward eight (8) since the 29th day of May, 1926, but they had never voted at any other precinct and had always voted at Calvin, and that Mr. O. B. Bice had lived . in Winnfield, ward one (1), since August, 1927.

"It is clear that these voters are illegal voters if the Court is authorized to inquire into same.

"The testimony was timely objected to by the plaintiff, and was admitted subject to the objection.

"The Court is of the opinion that the objections urged by both the plaintiff and defendant on this point are good, and that the Court is not authorized to pass upon the political domicile of these voters or as to what place was their political domicile.

"The constitution and registration laws place the question of a voter's political domicile in the hands of a jury when same is in question, and the registration laws make provision for the registration of voters and the removal of same from the registration.

"In the event that the Registrar fails to dischage his duty, the law gives to any voter the right to apply to the Court and direct action to have the illegal voters removed from the registration.

"In a contest case, the question of whether a person who has duly registered according to law, has a right to vote since he does not reside in the place he votes, the time required by law, cannot be gone into. This would be a collateral attack upon the registration, which is prohibited both by the constitution and by the law.

"This matter was settled in the case of Perez vs. Cognevich, 156 La. 331, and Turregana vs. Whittington, 132 La. 454.

"This being the case, the defendant cannot question the right of Mr. and Mrs. W. H. Carter, O. B. Bice, and Mr. and Mrs. B. R. Carter to vote in the election held at Calvin on the ground that they did not reside in that ward; neither can the plaintiff question the right of Mr. and Mrs. Roy Sanders had a political domicile in Calvin, but the Court can pass upon the subject as to whether they changed their political domicile timely and in the manner prescribed by law.

"The evidence shows that this change in the registration from ward seven (7) to ward eight (8) was made on the 24th day of February, 1928, on the mere verbal requests of Mr. and Mrs. Roy Sanders at their home. The law states that they shall make affidavit showing the time of the change of their residence, and upon making such affidavit the Registrar shall make the change. There was no affidavit or even application made for the change, and it seems that the voters did not make an honest effort to comply with the law, in having their registration changed from ward seven (7) to ward eight (8).

"The primary election law, section ten (10), especially provides: 'Any voter moving from one election ward or precinct to another in the same parish and therein continuously residing for three months, shall, by making affidavit of such change of residence, giving date of such removal, to the Registrar or his chief deputy, have the registration records changed accordingly to correspond with the new residence.'

"It further provides as follows: 'It is especially provided that no change of residence as above mentioned shall be made on the registration books during the thirty days' period next preceding the election.'

"Mr. and Mrs. Roy Sanders did not make the affidavit as required by the above section, and the Registrar made the change just four days prior to the election, when the law specifically provides that they cannot be made within thirty (30) days.

"It is contended by defendant's attorneys that this law is in conflict with section sixteen (16) of Article eight (8) of the Constitution of 1921, which provides as follows:

"'Electors shall not be registered within thirty days next preceding any election at which they may offer to vote, but application to the Courts, and appeals, provided for in this constitution, may be heard and determined, and revision and transfer from precinct to precinct in the same parish may take place at any time prior to the election.'

"If section sixteen (16) of Article eight (8) of the constitution is construed to mean that the voter may transfer from

one precinct to another precinct at any time, before election, then the primary law is superseded by that section of the constitution; but it can hardly be contended that the framers of the constitution intended to give the Registrar of Voters the right to change the registration of any voter from one precinct to another precinct, at any time before the election, especially when the voters do not make an affidavit as to their date of change of residence. If this was intended, and could be done, a Registrar of voters, by changing the registration of several voters on the day before election to a certain ward, could control the election in any ward in a parish, and by such maneuvering could elect the candidates of his choice. The logical and reasonable intention of the framers of the constitution as expressed in section sixteen (16) of Article eight (8) of the constitution means that Court proceedings might be had within this thirty days and after the Court had acted any revision and transfer the Court saw fit to make, could be entered on the registration books.

"Section four (4) of Article eight (8) of the Constitution of 1921 provides that the legislature shall make laws to secure fairness in any primary election, etc., and as a result of this section the legislature has enacted the Democratic Primary Election Law for the state, and that law provides that no one can change his voting precinct unless he makes an affidavit stating the day of the change of his political residence, and this change must be done in thirty (30) days prior to the election.

"The Democratic primary law also requires the Registrar of Voters seven (7) days before election day to make a certified list of all voters and certify to same as being complete, and must turn it over to the Democratic Executive Committee within three days of the election.

"If a voter can change from precinct to precinct at any time before the election, then the Registrar of voters cannot make a complete list of the registered voters as required by law, and the candidates would have no opportunity of knowing who are the registered voters in their ward or precinct, and would have no opportunity to bring an action to purge the registration of illegal voters.

"Mr. and Mrs. Roy Sanders having not complied with this formality of the law of making an affidavit, and their registration being changed four (4) days before the election, is not timely, and for these reasons they were not entitled to vote in the primary election held in ward eight (8) on the 28th day of February, 1928, and their votes should be stricken from the number that the defendant received, and the plaintiff should be declared the Democratic nominee for police juror of ward eight (8).".

We have carefully read the evidence and briefs of counsel and being satisfied that the findings of fact and conclusions of law of the district judge are correct, adopt them as our own.

Defendant insists that he has the right to contest the legality of the five votes that he contends were illegally cast for plaintiff, since plaintiff was permitted to contest the legality of the two votes he claims were illegally cast for defendant.

We do not think so.

The difference in the qualifications to vote of the two votes cast for defendant and alleged by plaintiff to have been illegally cast and the five votes cast for plaintiff and alleged by defendant to have been illegally cast, is that the five voters were duly registered as such and their names appeared on the poll lists a sufficient length of time before the 28th day of February, 1928, for defendant to have them erased therefrom in the manner prescribed by law for purging the poll lists of names illegally appearing thereon.

"Since Constitution of 1921, Article 8, section 5, and Act No. 122 of 1921, sections 8, 9, 11, 12 and 13, provide direct proceedings to purge registration rolls, that voters at primary election had no right to vote because not legally registered or not entitled to registration, could not be raised by collateral attack on registration in primary election contest."

Perez vs. Cognevich, 156 La. 331, 100 South. 444.

Whereas, as to the two votes claimed by plaintiff to have been illegally cast were not put on the registration rolls until four days before day of election, which time was entirely inadequate for plaintiff to have had them removed therefrom in the manner provided by law for purging the registration rolls before the day of election. Had plaintiff resorted to this method of having the names of Mr. and Mrs. Roy Sanders removed from the registration rolls the election must necessarily have taken place before the rolls could have been purged of their names.

We therefore think that plaintiff had the right to contest their right to vote on the grounds set up and by pursuing the method he did in this action.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.

---

ON APPLICATION FOR REHEARING.

By the Court:

The rehearing applied for cannot be entertained, under section 27 of Act No. 97 of 1922, which specifically provides:

"That no application for rehearing shall be entertained."

And we decline to consider the case further, for the reason that there are no manifest errors in the judgment to which our attention has been called.