Henry F. Bender and William Schurb, candidates in a second primary election for the office of alderman for the City of Gretna, filed two suits, alleging that, in the election on May 13, 1941, they received sufficient votes to have been elected as the Democratic nominees. Frank J. Delery and John P. Ray, two of the apparently successful candidates in the election and the Democratic Municipal Executive Committee of the City of Gretna were made defendants.
The trial court rendered judgment decreeing that Henry F. Bender, who received 1,689 votes, Eugene Gehring, who received 1,695 votes, and John P. Ray, who received 1,683 votes, were nominated as Democratic candidates for the office of alderman for the City of Gretna in the primary election held on May 13, 1941. This appeal involves a contest between Henry F. Bender (referred to herein as "contestant") and Frank J. Delery (referred to herein as "contestee").
At the trial each of the two factions interested in the election nominated two tellers for each of the precincts and the district judge appointed the tellers so nominated. The contestee contends that during the recount by the tellers in open court some of the contested ballots were counted and other contested ballots were not counted; and that in each case, regardless of whether the contested ballot was counted or not counted, there was an understanding that the validity of the contested ballots was to be determined by the trial judge, who was to make adjustments in the returns of the tellers according to the rulings of law which he made.
In addition to the validity of the decisions of law by the trial court, this appeal *Page 206 
raises questions as to whether the trial court made correct mathematical computations when making the adjustments of returns of the tellers. The contestee contends that the trial court committed error through double counts of a number of votes for the contestant and by deducting from the vote of the contestee, ballots which had never been added to the contestee's vote.
If the record definitely designated the contested ballots which were counted by the tellers in open court, it would be a simple matter to determine the validity of the contestee's contentions relative to the mathematical accuracy of the adjustments which the trial court made in the returns of the tellers.
Unfortunately, the record is deficient. Although the tally sheets are made a part of the record, neither the tally sheets nor the transcript of testimony contain a description of the procedure followed in the several precincts. A proper record, in addition to stating the votes by precincts, would have designated, (1) the contested ballots included in such vote, and, (2) the contested ballots not included in such vote which were submitted to the court for ruling on the question of validity.
The record contains only two rulings by the district court designating ballots which were counted by the tellers in open court. In the absence of a ruling in open court on the remainder of the contested ballots, and since the formal statement outlining the procedure in the several precincts was not made a part of the record, it is necessary to resort to the objections of counsel to the contested ballots in order the find evidence as to whether the contested ballots were counted by the tellers in open court.
The counting by the tellers in open court was completed at 6:30 p.m., Friday May 30, 1941, and, at 6:45 p.m., court was adjourned until Saturday morning, May 31, 1941. On Saturday morning several witnesses were examined and then Mr. Fred A. Middleton, attorney for the contestant stated:
"If it pleases your Honor, we are ready to discuss the various spoiled and protested ballots."
There followed a series of objections to contested ballots.
In view of the fact that the above procedure shows that attention was concentrated on the contested ballots at one time, an unchallenged objection by counsel definitely stating that a ballot had been counted by the tellers, or that it had not been counted by the tellers, is convincing evidence as to whether the tellers' count included such ballot. In several instances counsel's objections fail to state specifically whether the ballots had been counted by the tellers, and the court refuses to draw conclusions from indefinite language.
It is necessary to consider the ballots individually, but they may be treated in three groups, as three general theories of law are raised, to-wit: Collateral attack on registration, absentee ballots, and spoiled ballots.
The most recent statutory provision relative to the removal of a registrant from one parish to another parish is as follows:-
"* * * The removal from one Parish to another shall not deprive any registrant therein of the right to remain as a legal registrant in the Parish from which he has removed, for the purpose of voting for District officers to be elected in a district which includes the Parish to which he has removed, or for State officers, whether the Parish be in the same District or not, until he shall have acquired the right to register and vote for such officers in the Parish to which he has removed." Act 45 of 1940, Art. VI, Section 6.
The preservation of the right to vote at the parish of former residence for only state and district officers evidently means that the Legislature intended for the removal of a registrant from a city in one parish to another parish to deprive the registrant of the right to vote in the municipal elections thereafter held in his former domicile. The removal from one parish to another seems to disfranchise the registrant for one year insofar as municipal elections are concerned, because, (1) under section 6 of Article VI of the statute above quoted, the right to vote in the municipal elections of his former domicile is lost, and, (2) under section 1 (a) of Article II of the same act, registration in the parish of the new domicile cannot take place until after a year's residence.
Between twenty-four and twenty-eight days prior to the primary election of May 13, 1941, Mrs. Dalton Hotard and Mrs. Marie Rousse moved from Gretna to Algiers, which is located in Orleans Parish. When Mrs. Hotard and Mrs. Rousse appeared in Ward 1, Precinct 1, in which they *Page 207 
had registered, protests against their eligibility to vote were made and attached to their ballots. Their ballots were marked in favor of the contestee.
The contestee argues that the trial court erred in admitting evidence that Mrs. Hotard and Mrs. Rousse had moved from the city and parish. This contention is based on the proposition of law that a collateral attack cannot be made on registration, which was announced by the Supreme Court of Louisiana in the case of Perez v. Cognevich, 156 La. 331, 100 So. 444, and followed in Doughty v. Allen, 170 La. 556, 128 So. 514. In the Perez case the court said that "Both the Constitution and the enactments of the Legislature contemplate direct proceedings against a voter to strike his name from the rolls, except, of course, when it appears that the voter has died, or it appears that since his registration he has been convicted of a felony, or has been declared insane". 156 La. page 339, 100 So. page 447.
Under the express provision of Act 45 of 1940, quoted supra, the removal by Mrs. Hotard and Mrs. Rousse from Gretna to Algiers was not a basis for a direct attack upon their registration. Act 45 of 1940 specifically states that the registrations remain valid for the purpose of voting for district officers to be elected in a district including the two parishes and for the purpose of voting for state officers until the registrants acquire the right to register and vote for such officers in the parish to which they remove.
According to our interpretation of section 6 of Article VI of Act 45 of 1940, Mrs. Hotard and Mrs. Rousse, by moving to Algiers (Orleans Parish), lost the right to vote in the municipal elections of Gretna (Jefferson Parish), but they retained the right to vote in Jefferson Parish in state elections and in any district election in which Orleans and Jefferson Parishes form parts of the same district. Therefore, since registration must remain effective for the purpose of certain elections, a collateral attack proving the disqualification in the municipal election is necessary, and, therefore, the rule of Perez v. Cognevich, supra, has no application. Even were it possible for a direct attack to be made upon the registration of Mrs. Hotard and Mrs. Rousse for the purpose of invalidating their registration, insofar as Gretna elections are concerned, it is doubtful that the rule of Perez v. Cognevich, supra, has application to a case where a registrant moves from the city within such a short period of time that there is a high degree of improbability that either the registrar of voters, or the opposing political faction, would discover the removal in time to institute a direct proceeding attacking the registration for municipal purposes. See Carter v. Martin, 2nd Circuit, 8 La.App. 8.
Although we thus sustain the trial court in the ruling that the ballots of Mrs. Hotard and of Mrs. Rousse were illegal, the contestee contends that the ballots of Mrs. Hotard and Mrs. Rousse were never counted in his favor, and, hence, that the trial court committed error in deducting these two votes from his count. In our opinion the contestee and not the court erred, for we find that these two ballots were not counted by the tellers in open court. The only evidence on this fact is found in the following unchallenged objections of Mr. Fred A. Middleton, attorney for contestant:
"We object to the vote cast for Delery, Haas and Ray, and protested by Andrew Krauss, for the reason that Mrs. Dalton Hotard had moved from the Parish of Jefferson. This ballot has been counted in the tabulation by the Tellers in open Court. This ballot marked for identification P. #2.
"Ballot cast for Delery, Ray and Haas, protested by Commissioner Krauss, objected to for reason that voter, Mrs. Marie Rousse, had moved from the City of Gretna prior to the election, and mark same for identification P. #3. This vote has been counted by the Tellers in tabulation made in open Court."
Counsel for contestant, in oral argument, admitted that the trial judge erred in excluding the vote of Sam J. Lyons for the contestee in Ward 2, Precinct 1. The admission was made upon the basis of the ruling in Perez v. Cognevich, supra, and of the testimony to the effect that the nonresidence of Mr. Lyons had been for ten years, a period of time during which a direct attack upon his registration easily could have been made. Therefore, upon the basis of the admission relative to the ballot of Sam J. Lyons, one vote must be added in favor of contestee.
Contestee further contends that, although the trial court ruled in his favor on the point that Mr. and Mrs. Lawrence Sissung, who voted for him, were registrants *Page 208 
of Gretna, the votes of these parties were neither counted in open court, nor added to his count by the trial court. As we interpret that part of the trial court's judgment relative to Ward 2, Precinct 1, the court did count the votes of Mr. and Mrs. Sissung. Evidently the two Sissung votes were cancelled in the trial court's computation by the deduction of two votes for Delery which was made in connection with the ballots marked respondent Nos. 10 and 12. It is true that an error was made in deducting two votes from contestee's count in connection with respondent Nos. 10 and 12 and adjustments for such errors are made later in this opinion.
At the polls the representatives of the contestee protested the absentee ballots which were cast for the contestant by Miss Dolores Becker and Mrs. William Hartley in Ward 3, Precinct 1. In each case the protest challenged the ballot on the ground that it was not voted in secrecy. At the trial proof was presented by the contestant that the ballots were voted in secrecy, but the contestee proved that Miss Becker and Mrs. Hartley were in the Parish of Jefferson on the day of the election.
Section 73 of Act 46 of 1940 requires the attachment to each contested ballot of a memorandum setting forth the ground of protest. If it were permissible to state an untrue ground of protest for the purpose of preserving the right to investigate the existence of a valid ground, we would have a rule encouraging the use of protest, and, hence, interference with the secrecy of the ballot. In our opinion the Legislature intended that Section 73 of the primary law should be liberally interpreted, since the requirement of a statement of the ground of protest tends to preserve the secrecy of the ballot. Therefore, it is unnecessary to discuss the contestee's contention that the absentee voter's presence within the parish on election day invalidates his absentee vote.
The contestee further claims that the ballots of Miss Becker and of Mrs. Hartley were counted in open court and again counted by the trial judge in his opinion. We have examined the record carefully and find nothing therein showing the disposition which was made in open court of the ballots cast by Miss Becker and Mrs. Hartley. The objections of counsel fail to show whether these ballots were included in the tellers' count.
The following ballots were protested on the ground that they were spoiled ballots marked for identification:
Respondent 8 voted for Bender with a half cross in the square opposite Delery's name.
Respondent 9 voted for Bender with ink finger prints in three places.
Respondent 10 voted for Delery with pencil marks in the square opposite Bender's name.
Respondent 11 voted for Bender with pencil marks in the square opposite the name of Delery.
Respondent 12 voted for Delery with pencil marks opposite the name of Bender.
Respondent 13 voted for Bender with a half cross mark in the square opposite Delery's name.
Respondent 14 voted for Bender with a mark about 1/16 of an inch long in square opposite the name of Henry Haas.
Respondent 15 voted for Bender with an extra cross-mark by Bender's name, which extra cross-mark was almost erased.
The trial court held that ballots marked respondent Nos. 10, 11, 12 and 13 were invalid because marked for identification. Ballots marked respondent Nos. 8, 9, 14 and 15 were ruled valid by the trial court.
All of the marks on the ballots in question may have been placed on the ballots through the error of voters who had no intention of marking their ballots for identification. However, it is impossible to apply a subjective test on the question of whether ballots are spoiled. The purpose of our statutes relative to marks of identification is to invalidate ballots which may have been marked for the purpose of identification. It is the mark rather than the purpose of the mark which controls. A recent statement of the rule by the Supreme Court of Louisiana follows:
"The rule which we have adopted and which is the correct one to follow is that, if there are such marks or erasures on the ballot as may reasonably serve the purpose of marks of identification, the ballot is spoiled and should be rejected. This rule, we find, is followed in other jurisdictions." Bell v. Guenard, et al.,194 La. 956, 971, 195 So. 504, 509. *Page 209 
Other relevant quotations from the same opinion are as follows:
"Counsel for plaintiff argues that it is evident that the voter made a mistake by placing the cross mark opposite the name of one candidate and that he made an honest effort to correct his mistake by erasing that cross mark. That may be true, but the commissioners who rejected the ballot as spoiled had no way of knowing that, nor have we. The fact is that the erasure is clearly seen and is such as might easily serve the purpose of a mark of identification. [194 La. p. 969, 195 So. page 508]
"In the instant case the questioned ballot, because of the visible erasure, is easily distinguishable from the other ballots. Whether the voter intended so to mark his ballot as to make it distinguishable from others or not, we do not know, nor is it possible for us to know. The reason for making any mark on a ballot other than that prescribed by law, or for erasing therefrom any mark put thereon by him, is known only to the voter himself." 194 La. page 970, 195 So. page 508.
Since the ballots designated respondents 8, 9, 14 and 15, which the trial court incorrectly held valid, were voted for contestant, four votes must be deducted from his total.
The contestee further contends that the trial court made mathematical mistakes in handling the spoiled ballots and, hence, each of such contentions must be considered.
The contestee contends that the trial court not only held respondent No. 8 a valid ballot, but also, in his opinion, added an additional vote although he had ruled the ballot valid and counted the same at the trial. The following excerpt from the record shows that the contestee is correct in his contention that respondent No. 8 was counted for the contestant in open court:
Court. "The ballot marked Respondent No. 8, held good by the Court, has already been counted in the tabulation made by the Tellers in open Court."
It also is true that the trial court's opinion reads as if respondent No. 8 were being counted again, but an examination of the computation discloses that it was not counted twice. The tellers appointed by the court returned 254 votes for Bender in Ward 1, Precinct 2; the trial court states that by agreement of the parties three votes should be deducted from Bender's vote; and the trial court gives 251 as Bender's vote. As the deduction from 254 of three votes leaves 251 votes, it is evident that Respondent No. 8 was not counted twice.
The trial court made a double count of respondent No. 9 in favor of contestant and an additional vote must be deducted from contestant's count. The following unchallenged objection of Mr. Samuel J. Tennant, attorney for respondents, shows that this ballot was counted in open court:
"Ballot marked Respondents No. 9, protested on grounds it bears identification marks. If held bad it is to be deducted from the tabulation."
An error in computation also was made in connection with respondents 10, 11 and 12 which the trial court ruled spoiled and then deducted from the tabulation. These ballots were not counted in open court as proved by the following unchallenged objection of Mr. Tennant, attorney for the contestee-respondent:
"We protest failure to count Respondents Nos. 10, 11 and 12 for the reason that the Court has previously held in connection with Respondent No. 8, the mark is not an identification mark, * * *".
Since one of the votes was for the contestant and two for the contestee, the following additions must be made: One vote to contestant and two votes to contestee.
The contestee contends that respondent No. 14 was counted twice. Page 32 of the testimony clearly shows that respondent No. 14 was counted in open court. However, there is no evidence that respondent No. 14 was counted again by the trial court in its judgment. The third full paragraph on page thirty of the record, which gives the trial court's discussion of respondent No. 14, merely states that the ballot is valid and does not add it to the count.
While the trial court holds that respondent No. 15 was valid, respondent No. 15 was not counted by it in its opinion. The tellers returned 668 votes for Bender in Ward 3, Precinct 1 and the trial court added three absentee ballots to Bender's vote and seventeen votes from thirty-two ballots which the tellers did not tabulate, *Page 210 
bringing Bender's total to 688 which total was not increased by either respondent No. 14 or by respondent No. 15.
It is true that in making the final tabulation at the bottom of page 30 of the Record the trial court, without explanation, lists Bender's vote in Ward 3, Precinct 1 as 689 instead of 688, thus making an error of one vote in Bender's favor which we classify as a typographical error instead of as an effort to count either respondent No. 14 or respondent No. 15. This typographical error requires the deduction of one vote from the contestant's count.
The contestee correctly contends that, since respondent No. 15 is invalid, the trial court's failure to count No. 15 in the judgment would not remove the prejudice to contestee if respondent No. 15 was counted in open court. Counsel's objection to respondent No. 15 at the trial fails to state whether the vote was counted in open court, and thus we have no evidence in the record relative to the treatment of this ballot. However, since the trial court ruled that "ballot 15 is held to be a good and valid ballot", it is fair to assume that he would have added a vote to Bender's count if the ballot had not already been counted, and, therefore, a deduction of one vote from Bender's count is made in connection with Respondent No. 15. If the method of treatment of Respondent No. 15 were decisive of the case, perhaps the risk of an incomplete record would have to be placed on the contestee who seeks to set aside the judgment below.
The summary of the errors for which adjustment must be made in the final vote given by the trial court is as follows:
 Correction Correction
 of Contestee's of Contestant's
Theory of Law: Ballot: Vote Vote
— ------------ ------- --------- -----------
Collateral Attack Sam J. Lyons + 1
Spoiled Ballots Respondent No. 8 — 1
 " " " " 9 — 2
 " " " " 10 + 1
 " " " " 11 + 1
 " " " " 12 + 1
 " " " " 14 — 1
 " " " " 15 — 1
 Typographical error in final tabulation
on page 30 of record in giving Bender 689
votes instead of 688 votes for Ward 3,
Precinct l, — 1
 --- ----
 + 3 — 5

The trial court's final tabulation, after the corrections due to legal and mathematical errors are made, produces the following result:
 Bender Delery
 -------- --------
Trial Court's tabulation, 1,689 1,678
Corrections, — 5 + 3
 ----- -----
Corrected vote ........................... 1,684 1,681

It is obvious that Bender received a majority of the legal votes cast.
Our decree affirming the judgment of the lower court was handed down by us on June 7, 1941, in conformity with the requirements of Act 46 of 1940, the primary election law.